**UNITED STATES of America, Appellee,**

v.

**Manuel C. THOMAS,
Defendant, Appellant.**

**Nos. 89–1010, 89–1020.**

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1989.
Decided Feb. 6, 1990.

Edwin J. Gale, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, for the U.S.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and GARRITY,* Senior District Judge.

GARRITY, Senior District Judge.

Appellant Manuel C. Thomas was convicted of two counts in a 27–count indictment charging five defendants in Count I with conspiring to distribute cocaine in violation of § 841(a)(1) of Title 21 of the United States Code and related substantive offenses. After the appellant was found guilty of the conspiracy charge, he pled guilty to the substantive offense alleged in Count II, viz., distribution of one gram, more or less, of a mixture containing cocaine. He was sentenced to 48 months incarceration concurrently on both counts. He filed separate appeals, which have been consolidated. Appellant appeals from the conspiracy conviction on the basis that he was entitled to a multiple conspiracy instruction which the trial judge refused to give and seeks re-sentencing on both counts on the basis that the judge did not comply with applicable Sentencing Guidelines. We affirm.

## I.

The conspiracy charged in Count I had been severed from the substantive counts early in the proceedings; the case against the principal defendant, Edward A. D'Alessio, who was ill and has since died, was severed also. A second co-defendant, Louis A. Mirra, pled guilty before trial. The conspiracy trial commenced against the appellant and co-defendants, Melvin R. Ashley and John Sylvia; but Ashley entered a conditional plea of guilty at the conclusion of the evidence, and Sylvia was acquitted by direction of the court.[1]

The first count of the indictment alleged that the five defendants "did knowingly,

Edward F. Grourke, by appointment of the Court, with whom Law Offices of John J. Finan, Jr., was on brief for defendant, appellant.

* Of the District of Massachusetts, sitting by designation.

1. The government's brief on appeal states erroneously that Sylvia was acquitted by the jury. Only the case against the appellant was submitted to and decided by the jury.

intentionally and wilfully combine, conspire, confederate, and agree with each other and with diverse other persons known and unknown to knowingly and intentionally distribute and possess with intent to distribute a mixture containing cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); All in violation of Title 21, United States Code, Section 846." The other 26 counts alleged four deliveries of cocaine and the use of the telephone in arranging them and in negotiating transactions that were never consummated.

The evidence at trial substantiated the charges, as follows: (a) three sales of cocaine by D'Alessio to the undercover agent Brennan—August 22, 1987 at Newport, Rhode Island (Count III), two ounces for $3,600; August 28, 1987 at Newport (Count VI [2]), eight ounces for $9,200; and September 29, 1987 at Newport (Count XII), 17 ounces for $17,000; (b) delivery on August 21, 1987 by D'Alessio and Thomas [3] to Brennan at Newport a half-gram sample of cocaine for which no money was paid; (c) in all remaining 22 counts, D'Alessio's use of the telephone in violation of 21 U.S.C. § 843(b), the first 15 of such uses in conversations with Brennan from August 26, 1987 to February 2, 1988 to facilitate the distribution of cocaine and the last seven in conversations with co-defendant Ashley from February 2 to 19, 1988, one to facilitate a distribution of cocaine and six to facilitate a conspiracy to distribute.

## II.

As construed most favorably to the government, *United States v. Bruckman*, 874 F.2d 57, 59 (1st Cir.1989), the evidence recounted an undercover investigation of trafficking in cocaine by detective Michael Brennan of the Newport, Rhode Island, Police Department in collaboration with Special Agent Raymond J. Moffett, resident agent in charge of the Providence office of the federal Drug Enforcement Administration ("DEA"), which supplied Brennan with the $26,200 for the August 28 and September 29 purchases. Detective Brennan had arrested a woman for distributing cocaine in August 1987 and persuaded her to introduce him to her source. She introduced him to D'Alessio at a Newport bar on August 21, 1987. D'Alessio was accompanied by the defendant and no others. The four of them conversed casually for a while whereupon Brennan asked D'Alessio if just the two of them could leave the table and talk alone, which they did. On returning to the table where the defendant and informant were still seated, D'Alessio removed a set of automobile keys from his pocket and handed them to the defendant, saying, "Go get one from the car," whereupon the defendant asked, "A small one or a big one?" to which D'Alessio responded, "A small one." The defendant left, was gone for about five minutes, and upon returning, reached into the breast pocket of his shirt and removed a cellophane packet which he handed to D'Alessio who, in the presence of the defendant and the others, placed it in a folded napkin and handed it over to Brennan. The packet contained approximately one-half gram of a mixture containing a detectable amount of cocaine. This transaction was charged against D'Alessio and Thomas in Count II as the earliest substantive violation of § 841(a)(1) of Title 21, citing also § 2 of Title 18.

For the next six months Brennan pursued his investigation. On August 22, 1987, the day following his receipt of the sample, he purchased two ounces of cocaine from D'Alessio. A week later he bought another eight ounces and a month thereafter, on September 29, another 17 ounces. This was the last sale by D'Alessio to Brennan, but they negotiated constantly with respect to future transactions. Brennan recorded numerous telephone calls he placed to D'Alessio and obtained court approval to monitor phone calls from

---

**2.** Defendant Mirra, who pled guilty before trial, was charged jointly in this count.

**3.** Defendant Thomas pled guilty to this charge and on appeal challenges only the sentence imposed as violative of the Sentencing Guidelines, which, however, did not become effective until November 1, 1987.

D'Alessio's home. To discuss further sales and to enhance his image as a big-time dealer, Brennan met with D'Alessio in Kittery, Maine, and twice in Marlboro, Massachusetts. The appellant was never mentioned in any of the telephone conversations or negotiations and never attended any of the meetings. However, Mirra and Sylvia accompanied D'Alessio at times and were eventually charged as co-defendants.

Toward the end of 1987, Brennan pretended that he was interested in purchasing quantities as large as 20 kilograms.[4] Although D'Alessio kept assuring Brennan that he could broker a deal of that size,[5] he was unable to obtain the necessary funds or credit. Also, D'Alessio was stalling because his own source, Ashley, was in the hospital. So Brennan said that he and his customers would wait no longer and he would satisfy their demands by buying from a source in Connecticut. Of course, Brennan had no such source but was employing a ruse designed to develop additional evidence and to deceive D'Alessio into surrendering, at the time of his arrest, such funds as he was able to accumulate. Brennan proposed that they share, or "go halves," in a purchase of cocaine from the supposed source in Connecticut. Each was to purchase half a kilogram for $11,500. D'Alessio agreed to the plan and in a phone conversation on February 23 asked to bring someone along. In pertinent part, their conversation was as follows:

Brennan: You know, I'm at least doing the half K myself.

D'Alessio: Ummm.

Brennan: If ya want in, I'll pick you up and we'll go down.

D'Alessio: Listen, I'm gonna give it to ya straight.

Brennan: Okay.

D'Alessio: Do we have to take an iron with us?

Brennan: Huh?

D'Alessio: Do I have to take an iron with me?

Brennan: Do you have to take an iron with ya?

D'Alessio: Yup.

Brennan: Well, I'm not gonna take anything.

D'Alessio: Huh?

Brennan: I don't, not me, I don't, I don't mess with that.

D'Alessio: Well, think I should?

Brennan: Well, you wanna take

D'Alessio: Another man with me.

Brennan: You have a guy with ya?

D'Alessio: Uh huh.

Brennan: Is it someone I know?

D'Alessio: Yup.

Brennan: Who? Which guy?

D'Alessio: You met him.

Brennan: Yeah. Where? I met so many different people.

D'Alessio: You only met three.

Brennan: Yeah. Well, which one?

D'Alessio: Down here, remember?

Brennan: No. Okay. Oh, one of, oh, when we had lunch together?

D'Alessio: Right.

On February 24 at noon, as agreed, D'Alessio drove to the appointed place with the defendant who occupied the passenger seat of the car. They were both arrested and $11,500 was seized from the front seat next to D'Alessio.

Subsequent to his arrest the defendant conversed with FBI Agent Shay and told him that when he first met Brennan on August 21 he had gone to the bar with D'Alessio because D'Alessio told him he was going to meet an individual to discuss a cocaine transaction and that D'Alessio also said en route that he had two samples of cocaine in the glove compartment of his car, a bigger one and a smaller one. The defendant said that at D'Alessio's request he went from the meeting in the bar to the car, got the sample and brought it back. He said that D'Alessio some weeks thereafter told him that he had done a two-ounce

---

4. It seems fairly inferable that the DEA was unwilling to invest more in the investigation than the $26,200 already expended.

5. This was the conspiracy to which Counts XXII to XXVII pertained, charging use of the telephone to facilitate a conspiracy occurring in February, 1988.

cocaine deal with Brennan. The defendant further stated that on February 24, 1988, he knew that D'Alessio and he were driving to the Newport Mall to meet Brennan again because D'Alessio and Brennan were going to do a joint cocaine deal.

### III.

■ Defendant's first argument on appeal is that the trial judge "erred in failing to give the requested instructions in multiple conspiracies." The controlling law is clear, as set forth in *United States v. Leach*, 427 F.2d 1107, 1112–13 (1st Cir. 1970):

It is reversible error for the court to refuse a request to instruct as to defendant's theory of the case if there is evidence to support it.

The rule is equally applicable to situations where special facts present an evidentiary theory which if believed would defeat the factual theory of the prosecution. *However, the defendant must tender an instruction that is appropriate in form and substance.* Where he fails to accomplish this, the court is not obligated to give an instruction unless a particularly sensitive defense is involved, or the facts adduced at trial are so complex and confusing that an understanding of the issues would be beyond the grasp of the jury. By the same token, *defendants who are denied their requests must protect their rights as required by Fed.R.Crim.P. 30,* except to the extent that a reviewing court may find that the denial constitutes plain error.

(Citations omitted) (emphasis added). Rule 30, Fed.R.Crim.P., requires that, in order to preserve a point for appeal, a defendant must state "distinctly the matter to which that party objects and the grounds of the objection." In the instant case, the district judge called counsel to the side bar at the close of the evidence. The only colloquy recorded in the trial transcript was as follows:

6. This is plainly not an exceptional case within the meaning of the *Leach* rule, *supra,* involving

THE COURT: ... Now, I'll see counsel before I have you withdraw. Yes.

(Off-the-record bench conference)

(At the bench:)

THE COURT: You say you're objecting in that you want me to instruct them on multiple conspiracies?

MR. GROURKE: That's correct, your Honor.

THE COURT: I don't think we have a multiple conspiracy in this case, and I deny that request.

MR. GROURKE: Thank you.

THE COURT: I give you an exception.

MR. GROURKE: Thank you, your Honor.

(Open court)

The defendant had filed no written requests for instructions. For aught that appears, defense counsel may simply have directed the attention of the trial judge to the last six counts of the indictment which charge D'Alessio and Ashley with having used the telephone to facilitate the conspiracy to sell quantities of cocaine larger than could be arranged by D'Alessio, a conspiracy arguably distinct from that alleged in Count I. So far as appears from the record, the defendant simply asked the trial judge to instruct on the subject matter of multiple conspiracies; and at no time indicated to the judge what instruction he believed should be given.[6] Accordingly our review will be confined to determining whether the judge's omission to instruct on multiple conspiracies constituted plain error.

■ The test for such error is whether there was a variance between the conspiracy charged in the indictment and the one implicating the defendant according to the evidence adduced at trial which prejudiced the substantial rights of the accused. *See United States v. Cambindo Valencia,* 609 F.2d 603, 621–29 (2d Cir.1979), *cert. denied sub nom. Prado v. United States,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).

"a particularly sensitive defense ... or ... issues ... beyond the grasp of the jury."

The initial question to be asked is whether the evidence is sufficient to permit a jury to find the agreement that the indictment charges. *United States v. Glenn*, 828 F.2d 855, 858 (1st Cir.1987). In the instant case, this question must be answered affirmatively. The conspiracy charged in Count I was the standard violation of 21 U.S.C. § 846, charging an unlawful agreement by several defendants in a specified place during a specified period of time to distribute knowingly a controlled substance.

The charge was relatively simple, naming only five defendants and embracing a period of only seven months. The proof was even simpler. Only three defendants went to trial and the distributions of a controlled substance contemplated by the agreement all occurred within a period of five weeks, from August 21 to September 29, 1987 and all were in one city, Newport, Rhode Island. All of the distributions were of the same controlled substance, cocaine, all were by the same seller, D'Alessio, to the same buyer, Brennan, and all were pursuant to the same pattern of operation, with the ringleader D'Alessio having someone else handle the contraband if feasible and having a confederate accompany him for protection. *See United States v. Erwin*, 793 F.2d 656, 662 (5th Cir.1986).

On appeal, the defendant never directly addressed the merits of this crucial initial question, but rather contended that the evidence showed four separate conspiracies, three of them occurring after the last of the three cocaine sales on September 29, 1987 and presumably evidenced by Brennan's efforts to arrange for further purchases. Defendant's contentions overlook the distinction between an unlawful agreement and overt acts performed to carry it out and misconceive the role of an undercover investigating agent. In discussing possible future transactions, the agent is not participating in an illegal conspiracy, but endeavoring to determine by additional evidence whether previous illegal sales were made pursuant to an illegal agreement.

The fourth conspiracy suggested by the defendant encompassed the discussions of a joint purchase from a Connecticut source that preceded the arrest of the five defendants on February 24. Defendant Thomas contends that the evidence showed only his "mere presence." We take a different view: to the extent shown by the evidence, when D'Alessio planned a conspiratorial discussion with a person he was meeting for the first time, he had with him for protection a man who knew in advance the illegal purpose of the meeting. That man for the first meeting, shown by the evidence, on August 21, 1987 was the defendant Thomas; and that man for the last such planned meeting was the same. There was, moreover, not the slightest evidence that the defendant withdrew from the conspiracy in the interim.

Finally, a variance between the conspiracies charged and proved and failure to instruct on multiple conspiracies are not grounds for reversal unless substantial rights of the defendant have been prejudiced. As explained in *United States v. Levine*, 569 F.2d 1175, 1177 (1st Cir.1978),

> These [cited] cases also establish that this error only requires reversal if it prejudices the defendant. The source of prejudice in a case such as this is the transference of guilt to an individual defendant involved in one conspiracy from evidence incriminating defendants in a conspiracy in which the particular defendant was not involved.[7]

Because of the way the defendant's case and trial developed, he did not suffer any such prejudice. Two of the five defendants never went to trial, and, of the three that were tried, his was the only case that was submitted to the jury. Also, the closing arguments of counsel and instructions by the court treated the case as if the indictment alleged only a conspiracy between the defendant Thomas and D'Alessio.

## IV.

Defendant first challenges the sentence imposed on Count I, conspiring to distrib-

---

**7.** Such transference of guilt is often referred to as a "spillover" against the particular defendant.

*E.g., United States v. Flaherty*, 668 F.2d 566, 582 (1st Cir.1981).

ute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant was sentenced under the Sentencing Guidelines and received a 48–month prison term, a $10,000 fine and a three year period of supervised release. Defendant asserts that the 48–month sentence exceeded the maximum allowable under the Sentencing Guidelines. We do not agree.

We note initially that, inasmuch as the conspiracy at issue continued past the effective date of the Sentencing Guidelines, November 1, 1987, the parties are in agreement that the Guidelines apply to the sentencing under Count I. *See* Pub.L. No. 98–473 § 235, *reprinted at* 18 U.S.C. § 3551 note (effective date of Guidelines); *accord United States v. White,* 869 F.2d 822, 826 (5th Cir.1989) (applying Guidelines to conspiracy that extended past November 1, 1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). The parties also agree that the base level for computing defendant's sentence under the Guidelines was Level 26. In addition, it is undisputed that defendant's past criminal activity placed him in Criminal History Category II.

Both the Probation Department and the prosecuting Assistant United States Attorney ("AUSA") recommended to the district judge that defendant's base offense level be reduced. In its presentence report, the Probation Department advised reducing his base offense level from Level 26 to Level 22. The Department gave defendant a two-point reduction for being a "minor" participant in the criminal activity, *see* Guideline § 3B1.2(b), and another two-point reduction for acceptance of responsibility, *see* Guideline § 3E1.1. The AUSA also recommended lowering defendant's base offense level to Level 22, but he arrived at this figure through a different calculation. He suggested a four-point reduction due to defendant's role as a "minimal" participant in the criminal activity. *See* Guideline § 3B1.2(a). The AUSA declined to grant any reduction for acceptance of responsibility because defendant refused to acknowledge that he knew D'Alessio had intended to purchase drugs on February 24, 1988.

 Defendant argues that the trial judge gave him both a four-point reduction for being a minimal participant and a two-point reduction for acceptance of responsibility. This, he calculates, results in a final offense level of 20. Since the range of allowable sentences for a Level 20 defendant with a Criminal History Category II is 37–46 months, defendant maintains that his sentence of 48 months exceeded the limits imposed by the Guidelines. We believe defendant has misinterpreted the district judge's sentence.

Our review of the sentencing hearing indicates that the district judge followed the recommendation of the Probation Department: he gave a two-point reduction for acceptance of responsibility and a two-point reduction for defendant's minor role in the criminal venture. The court stated:

Now, there were also two points for acceptance of responsibility. There were some issues as to whether or not that should have been done, but the defendant did acknowledge his guilt. The government recommends no points because they claim the defendant was not truthful but I can concede what the government states may be true but the fact remains—and it can't be denied—that he did indeed accept his responsibility and all of that is reported in the presentence report.

Later in the hearing the court stated to the defendant: "[Y]ou were a rather *minor* player...." (Emphasis added). The judge clearly understood the distinction made in the Guidelines between minimal and minor participants because in describing the Probation Department's position he stated: "[T]hey gave two points credit because they see him as a minor participant rather than a minimal participant which carries for [four] points. That is the Probation Officer did that." His use of the word "minor" cannot be dismissed as mere coincidence. We see no clear error in the court's determination that defendant was a minor rather than a minimal participant in the criminal activity. *See United States v. Wright,* 873 F.2d 437, 443–44 (1st Cir.1989) ("[T]he district court's decision whether a defendant is a 'minor' or 'minimal' participant in an offense is an instance where 'clearly erroneous' review is appropriate.").

We find that the district judge selected Level 22 as the final sentencing level for defendant. As the range of sentences allowable for a Criminal History Category II defendant sentenced under Level 22 is 46 to 57 months, defendant's 48–month sentence falls properly within the limits set by the Guidelines.

Defendant next contests the concurrent 48–month sentence he received on Count II for distribution of a controlled substance, relying on the Guidelines provision that distribution of less than 25 grams of cocaine is punishable at Level 12 by a sentence of from 12 to 18 months. On this basis, defendant asserts that his 48–month term should be reversed. But defendant ignores the rule that the Sentencing Guidelines apply only to offenses committed after November 1, 1987. Pub.L. No. 98–473 § 235, *reprinted at* 18 U.S.C. § 3551 note. *See United States v. Corpus*, 882 F.2d 546, 553 (1st Cir.1989); *United States v. Haines*, 855 F.2d 199, 200 (5th Cir.1988). The distribution of cocaine that was the basis for Count II occurred on August 22, 1987. The Guidelines were thus inapplicable. The trial judge was well aware that the Guidelines did not apply to the sentencing for Count II. In sentencing the defendant, he noted that Count II was "the substantive offense which took place prior to the guidelines...."

Since the Guidelines do not apply to Count II, we look to the underlying statute to determine the permissible sentence. Defendant was convicted of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1), which is punishable by up to 20 years in prison, *see* 21 U.S.C. § 841(b)(1)(C). The concurrent 48–month (4 year) sentence defendant received was thus well within the acceptable statutory range.

### V.

The judgments of the district court in both cases are affirmed.