966 F.2d 1455
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen Franklin OGLESBY, a/k/a David Allen Taylor (90-6574)
and Larry Oglesby (91-5705), Defendant-Appellants.
 Nos. 90-6574, 91-5705.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1992.
 
 Before MILBURN and SUHRHEINRICH, Circuit Judges, and COHN, District Judge*
 PER CURIAM.
 
 
 1
 Larry Oglesby was convicted of conspiracy to manufacture methamphetamine. He appeals his conviction, which we affirm, and his sentence, which we reverse in part and remand. Stephen Oglesby pled guilty to conspiring to manufacture methamphetamine, aiding and abetting the possession with intent to distribute methamphetamine, possession of firearms during the commission of a drug offense, and possession of a firearm by a convicted felon. He now appeals his guilty plea, which we affirm, and his sentence, which we reverse in part and remand.
 
 I.
 
 2
 In June 1989, Stephen Oglesby ("Stephen") and Sharla Forster traveled from Texas to Kentucky to visit Stephen's brother Larry Oglesby ("Larry"). During this visit, the three concocted a scheme to manufacture and distribute methamphetamine. Stephen and Forster returned to Texas, where Stephen recruited Larry Wills to participate in the methamphetamine operation. Stephen and Wills then drove back to Kentucky along with Maria Alvarez and "Robert," a juvenile. Upon arrival, Larry provided the group with money to stay in a hotel. The group met at Larry's house where they all, including Larry, discussed the methamphetamine operation. Their first concern was to secure a place in which to manufacture the methamphetamine. A trailer occupied by Danny Moore was located on the same property as Larry's house. Larry contacted Moore and paid him to vacate the trailer temporarily. Stephen set up a methamphetamine laboratory in the trailer and began to manufacture the drug. After producing a substantial quantity of methamphetamine oil, Stephen, Larry, and Wills traveled to Birmingham, Alabama, where they sold all but three grams.
 
 
 3
 After returning to Kentucky, Larry, Stephen, Wills, Forster, and Alvarez were arrested and charged with various offenses arising from their conspiracy. Wills, Forster, and Alvarez pled guilty. Stephen initially pled not guilty but later changed his plea to guilty. Larry pled not guilty and was convicted at a trial in which Wills, Forster, and Alvarez testified against him.
 
 II.
 
 4
 Larry raises two challenges to the jury instructions given at his trial. Neither were asserted as objections in the district court. Therefore, he must prove that the district court committed plain error in giving the instructions it did. Plain error arises "from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 479 U.S. 882 (1986). This does not describe Larry's trial.
 
 
 5
 Larry first complains that the trial court failed to instruct the jury regarding the credibility of the government's witnesses, specifically Alvarez, Forster, and Wills, who pled guilty and received lower sentences after testifying against Larry. We cannot say this constitutes plain error. The district court gave the jury a general instruction regarding the credibility of witnesses. Moreover, the jury was specifically instructed to consider that Alvarez, Forster, and Wills were convicted felons. In addition to these safeguards, the government's witnesses were subjected to rigorous cross examination. Moreover, the evidence against Larry was so overwhelming that the requested instruction would not likely have affected the jury's verdict. See United States v. Marquardt, 786 F.2d 771, 784 (7th Cir.1986).
 
 
 6
 Next, Larry contests the district court's failure to give a multiple conspiracy instruction. However, the testimony at trial clearly establishes that the co-conspirators envisioned an integrated operation to manufacture and distribute methamphetamine. All of the co-conspirators shared the common goal of profiting from the sale of methamphetamine to individuals outside the circle of co-conspirators, the nature of the scheme was such that the manufacture and the distribution of methamphetamine were integrated, and the activities of manufacturing and distributing were conducted at close to the same time. Therefore, it is appropriate to regard this scheme as a single conspiracy. See United States v. Horton, 847 F.2d 313, 317-18 (6th Cir.1988). At the very least, it was not plain error, or a miscarriage of justice, to fail to give an instruction on multiple conspiracies. See, e.g., United States v. Mack, 837 F.2d 254, 258 (6th Cir.1988); United States v. Thomas, 895 F.2d 51, 52-56 (1st Cir.1990).
 
 III.
 A.
 
 7
 21 U.S.C. § 841(b)(1)(A)(iii) ("subsection A") mandates a minimum sentence of ten years for one who manufacturers or possesses with intent to distribute or manufacture 100 grams of "pure" methamphetamine or one kilogram of "cut" methamphetamine. Section 841(b)(1)(B)(viii) ("subsection B") mandates a minimum sentence of five years for the same conduct if it involves ten grams of "pure" methamphetamine or 100 grams of "cut" methamphetamine. Stephen and Larry Oglesby were each sentenced under subsection A. As it currently stands, the record establishes only that they possessed 945.77 grams of cut methamphetamine, and the government concedes that the case should be remanded for resentencing.[2]
 
 
 8
 This court has broad discretion to define the scope of the proceedings on remand. See 18 U.S.C. § 3742(f)(1). We will not require a district court to repeat the entire process de novo when there is no articulated challenge to the district court's other findings and conclusions. Unless there is some indication of clear error, we will "not disturb the factual findings that underlie the district court's sentencing." United States v. Snyder, 913 F.2d 300, 303 (6th Cir.1990), cert. denied, 111 S.Ct. 709 (1991).
 
 
 9
 On remand, the district court should limit its inquiry to the amount of methamphetamine attributable to the Oglesbys for sentencing purposes. This should include the amount that the Oglesbys, by and through their conspiracy, were capable of producing. See United States v. Jennings, 945 F.2d 129, 136 (6th Cir.1991).
 
 
 10
 The remand proceeding is further complicated by a typographical error in subsection A. Until January 23, 1990, subsection A imposed a minimum sentence of ten years for proscribed conduct involving 100 grams of cut methamphetamine while subsection B imposed a five year minimum when 10 grams of pure or 100 grams of cut methamphetamine were involved. These provisions were inconsistent with respect to conduct involving cut methamphetamine, as they imposed conflicting minimum sentences for the possession or manufacture of 100 grams of cut methamphetamine.[3] To the extent that the sentence on remand is based on cut methamphetamine, the sentence should be imposed under subsection B. See United States v. Shaw, 920 F.2d 1225, 1228-29 (5th Cir.), cert. denied, 111 S.Ct. 2038 (1991). If, however, the sentence is based on pure methamphetamine, the inconsistency is irrelevant and the sentence may be imposed under subsection A, if it is otherwise applicable.
 
 B.
 
 11
 The district court assessed a four point enhancement to Stephen's offense level for his role as organizer in the conspiracy. This was based, inter alia, on "details revealed in the trial of Larry Oglesby." Stephen contends that the use at sentencing of such information, having been obtained after he pled guilty and in the course of a trial that was not his own, violates his due process rights, constitutes an ex post facto law, and abrogates the common law principle that a criminal law "must be defined with sufficient definiteness."
 
 
 12
 The Sentencing Guidelines continue the longstanding practice that "[a]ny information may be considered, so long as it has 'sufficient indicia of reliability to support its probable accuracy.' " U.S.S.G. § 6A1.3 commentary (quoting United States v. Marshall, 519 F.Supp. 751, 757 (E.D.Wis.1981), aff'd, 719 F.2d 887 (7th Cir.1983)).[4] With respect to the information upon which a sentence, as opposed to a conviction, is based, due process requires only that it be reliable. Stephen offers no indication that the evidence from his brother's trial was unreliable. Therefore, the use of such information for sentencing did not violate due process.
 
 
 13
 Stephen next contends that consideration at sentencing of information from his co-defendant's trial represents a judicial expansion of a criminal statute. Application of the "expanded" statute to him, he continues, is retroactive and therefore violates the constitutional proscription of ex post facto laws. See Bouie v. Columbia, 378 U.S. 347 (1964). This argument is utterly unfounded. The sentencing guidelines clearly establish that any reliable information may be considered. U.S.S.G. § 6A1.3 & commentary. As such, this case involves no expansion of existing law. Moreover, the clarity of the guidelines precludes a ruling that they lack sufficient definiteness. Compare Bouie, 378 U.S. at 352-53.
 
 C.
 
 14
 The district court determined that in 1978 Stephen had plead guilty to a felony drug offense, elevating the mandatory minimum sentence of subsection A to twenty years. It appears that Oregon, the jurisdiction where he was prosecuted has not maintained a judgment of conviction or other certification of the guilty plea exists. Stephen contends that he did not plead guilty and was not represented by counsel.[5]
 
 
 15
 Congress has directed us to "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). The district court relied on an Oregon docket sheet which shows that Stephen entered a plea of guilty, that the court read Stephen his rights when he entered the plea, and that he was represented by counsel. The district court also relied on an Oregon court order appointing counsel, a letter from the Oregon District Attorney stating that Stephen pled guilty, and a letter from Oregon probation officer corroborating the docket sheet. The record also contains a copy of the Oregon presentence report, which notes that Stephen Oglesby pled guilty and was represented by counsel. Given this evidence, we cannot say the district court's conclusion was clearly erroneous.
 
 D.
 
 16
 Stephen next argues that his guilty plea in this case was entered without sufficient understanding. To be valid, a guilty plea must be made voluntarily and intelligently. See, e.g., Caudill v. Jago, 747 F.2d 1046 (6th Cir.1984). Since Stephen does not attack the procedure through which his guilty plea was accepted, see Fed.R.Crim.P. 11, we will uphold the district court's finding that the plea was entered voluntarily and intelligently unless this finding is clearly erroneous. See United States v. Fry, 831 F.2d 664, 667 (6th Cir.1987).
 
 
 17
 Stephen claims that he took exception with details of Counts 1, 3, 5, and 6 and that this shows he did not understand his guilty plea. Count 1 charged him with conspiring to manufacture and sell methamphetamine with Larry, Forster, Wills, and Alvarez. In pleading guilty, he admitted to conspiring with all but his brother. This does not show that he misunderstood the charge or that he does not admit to having committed the acts comprising the offense. Count 3 charged Stephen with manufacturing methamphetamine in Kentucky between July 4 and July 25, 1989. He denied only being in Kentucky on July 4, 1989. Again, this does not show misunderstanding or vitiate his admission that he committed the offense. Finally, Counts 5 and 6 charged Stephen with illegal possession of firearms. The indictments specified three weapons. At the plea hearing, Stephen only admitted possessing two of them. As with the other exceptions this does not affect his understanding. None of Stephen's exceptions demonstrate a misunderstanding of the direct consequences of his plea. Brady v. United States, 397 U.S. 742, 756 (1970). Nor do they render the factual basis for the plea insufficient. See United States v. Picone, 773 F.2d 224, 226-27 (8th Cir.1985).
 
 IV.
 
 18
 Larry and Stephen Oglesby complain of ineffective assistance of counsel. Generally, we will not consider a claim of ineffective assistance of counsel on direct appeal, as " 'the record of the trial court's proceeding is normally insufficient for evaluating counsel's performance.' " United States v. Swidan, 888 F.2d 1076, 1981 (6th Cir.1989) (quoting United States v. Lopez, 728 F.2d 1359, 1363 (11th Cir.), cert. denied, 469 U.S. 828 (1984)). Where, however, the record is developed sufficiently to permit review, direct appeal will be entertained. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). This is a case where the record is inadequate. The first ground on which ineffective assistance is based is counsel's failure to raise various objections at sentencing. Since we have reversed and remanded on this issue, the record, from which the adequacy of trial counsel's performance is to be divined, remains incomplete. As such, we cannot determine whether the Oglesbys have suffered any prejudice.
 
 V.
 
 19
 For the foregoing reasons, we affirm the convictions of Larry Oglesby and Stephen Oglesby. However, we reverse their sentences and remand for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 The defendants filed written objections to the presentencing report but did not object to the sentence at the sentencing hearing. They acknowledge that they are required to show plain error, but the government concedes that the sentence is plainly erroneous
 
 
 [3]
 On January 23, 1990, Congress resolved this inconsistency by increasing the threshold amount of cut methamphetamine to one kilogram. See Pub.L. No. 101-647, § 1202, 104 Stat. 4789, 4830 (1990)
 
 
 [4]
 Since the Sentencing Guidelines state so clearly that such evidence may be used, Stephen Oglesby cannot now claim that he lacked notice that the "details" of Larry's trial might be used at his sentencing
 
 
 [5]
 The presentence report lists two convictions for this one incident (items 54 and 55). However, he received no guidelines enhancement for either. Thus, the clerical error in listing the conviction twice is harmless. As to the statutory enhancement, the court only referred to one conviction