57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
Victor SERNA-VEGA, Defendant-Appellant.
UNITED STATES, Appellee,
v.
Angel RAMOS-SANTIAGO, Defendant-Appellant.
 Nos. 94-1688, 94-1689.
 United States Court of Appeals,
First Circuit.
 June 12, 1995.
 
 Carlos A. Vazquez-Alvarez, Assistant Federal Public Defender, with whom Benicio Sanchez-Rivera, Federal Public Defender, was on joint brief for appellant Angel Ramos-Santiago; and Jorge E. Rivera-Ortiz, by Appointment of the Court, for appellant Victor Serna-Vega.
 Lisa A. Kahn, Attorney, Department of Justice, with whom Guillermo Gil, United States Attorney, and Warren Vazquez, Assistant United States Attorney, were on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Victor Serna-Vega and Angel Ramos-Santiago were each charged with one count of conspiracy to possess with intent to distribute approximately one hundred kilograms of cocaine, and one count of possession with intent to distribute eleven kilograms of cocaine. Serna-Vega was also charged with two counts of using a telephone in facilitating the drug conspiracy. Following a six-day trial, the jury found Serna- Vega guilty on all counts. The jury found Ramos-Santiago guilty on the substantive possession count and not guilty on the conspiracy count. Serna-Vega was sentenced to 235 months in prison and Ramos-Santiago was sentenced to 120 months in prison. Both defendants appeal their convictions, and Serna-Vega appeals his sentence. For the reasons stated herein, we affirm.
 
 BACKGROUND
 
 2
 The facts are presented in the light most favorable to the verdict. United States v. Echeverri, 982 F.2d 675, 676 (1st Cir. 1993). In early March 1993, Drug Enforcement Agency ("DEA") Special Agent Jefferson Moran ("Agent Moran") and DEA confidential informant Freddy Velez-Torres ("Velez-Torres") began negotiations with Hector Ayala-Rodriguez ("Ayala-Rodriguez"), the owner of a car dealership in Guanica, Puerto Rico, to sell him one hundred kilograms of cocaine. At the first meeting in which the drug transaction was discussed, Ayala-Rodriguez introduced appellant Victor Serna-Vega ("Serna-Vega") as his "right-hand man." Serna- Vega was present for most of the subsequent meetings where the drug transaction was discussed, and he conducted some of the early negotiations with the government agents.
 
 
 3
 Velez-Torres and Agent Moran-whom Velez-Torres introduced as his Colombian partner-visited the car dealership on June 14, 1993. In a conversation recorded by Agent Moran, he and Ayala-Rodriguez discussed the logistics for completing the drug transaction, including who would pick up the drugs. Serna-Vega was present for this discussion.
 
 
 4
 Velez-Torres testified that he met with Ayala-Rodriguez and Serna-Vega at the car dealership on June 22, 1993, and discussed the final plans for the drug transaction. He testified that he asked Ayala-Rodriguez whether they were interested in the hundred kilos and Ayala-Rodriguez responded, "Yes, yes, as we have been from the start." They agreed that the transaction would occur the next day.
 
 
 5
 On the morning of June 23, Velez-Torres met Serna-Vega and appellant Angel Ramos-Santiago ("Ramos-Santiago") at a restaurant in Caguas, Puerto Rico. Serna-Vega called Ayala-Rodriguez on a cellular phone and informed him that Velez-Torres had arrived. Ayala-Rodriguez told Serna-Vega to bring Velez-Torres to the TMT pier in Isla Grande where he was waiting for two cars from the United States to use to transport the drugs. Serna-Vega and Ramos-Santiago drove to the pier in Serna-Vega's car and Velez- Torres followed.
 
 
 6
 After meeting with Ayala-Rodriguez at the pier, Serna-Vega, Ramos-Santiago, and Velez-Torres went with him to a restaurant in Isla Verde. They discussed how they would complete the drug transaction with only three cars.[1] Serna-Vega stated that three cars would be sufficient because one could hold fifty kilos in its trunk and the other two could hold twenty-five kilos each. Ramos-Santiago reminded Ayala-Rodriguez that he had promised Ramos- Santiago one kilo of cocaine for his assistance in the transaction.
 
 
 7
 After about an hour, Velez-Torres drove each member of the group individually to a Holiday Inn where agent Moran and other DEA agents were waiting. As each of the four individuals arrived at the Holiday Inn, agent Moran led them, one by one, to a designated room where a transaction involving eleven kilos of cocaine was completed. The transactions were recorded by the government on both audio and videotape, which were played for the jury. The individuals were placed under arrest as they departed the hotel room.
 
 DISCUSSION
 
 8
 The defendants raise a host of issues on appeal. We address their arguments seriatim.
 
 I.
 
 9
 Ramos-Santiago argues that the evidence was insufficient to support his conviction for possession with intent to distribute approximately eleven kilograms of cocaine. See Fed. R. Crim. P. 29. He bears "the heavy burden of demonstrating that no reasonable jury could have found [him] guilty beyond a reasonable doubt." United States v. Innamorati, 996 F.2d 456, 469 (1st Cir.), cert. denied, 114 S. Ct. 409 (1993). We review the evidence in the light most favorable to the government, "drawing all plausible inferences in its favor and resolving all credibility determinations in line with the jury's verdict." Id.
 
 
 10
 The evidence adduced at trial was sufficient to sustain the verdict. DEA informant Velez-Torres testified that Ramos-Santiago was present approximately an hour before the scheduled pick-up during a discussion concerning the logistics of splitting up the cocaine among the three cars. Velez-Torres testified that Ramos-Santiago reminded Ayala-Rodriguez during this meeting that he had promised Ramos-Santiago one kilo of cocaine for his assistance in the transaction. Velez-Torres also testified that he and Ramos- Santiago drove together to the Holiday Inn for the pick-up, and that Ramos-Santiago questioned Velez-Torres concerning which car he was supposed to use to transport the cocaine. Finally, the jury viewed an audio and videotape showing Ramos-Santiago receiving eleven kilos of cocaine at the Holiday Inn. From this evidence, a reasonable jury could infer that Ramos-Santiago knowingly and intentionally possessed the eleven kilograms of cocaine. See United States v. Akinola, 985 F.2d 1105, 1109 (1st Cir. 1993). The jury could also infer, from the quantity of cocaine involved, that it was intended for distribution. See, e.g., United States v. Vargas, 945 F.2d 426, 429 (1st Cir. 1991) (possession of one kilogram of cocaine is sufficient quantity to support jury inference that it was not intended merely for personal consumption). The evidence was therefore sufficient for the jury to conclude beyond a reasonable doubt that Ramos-Santiago knowingly and intentionally possessed eleven kilograms of cocaine with the intent to distribute it.
 
 II.
 
 11
 Serna-Vega argues that the district court erred in admitting certain co-conspirator statements into evidence. An out- of-court statement by a co-conspirator is not hearsay if the government established by a preponderance of the evidence that the defendant and the declarant were members of a conspiracy when the statement was made and that the statement was made in furtherance of the conspiracy. See United States v. McCarthy, 961 F.2d 972, 977 (1st Cir. 1992) (citing United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977)); Fed. R. Evid. 801(d)(2)(E). We need not determine whether the challenged statements in this case are admissible as co-conspirator statements, however, because we conclude that they are, in any case, admissible as admissions by a party. See Fed. R. Evid. 801(d)(2)(A) (an admission offered against a party is not hearsay).
 
 
 12
 We generally review a district court's decision to admit or exclude evidence under an abuse of discretion standard. United States v. Tuesta-Toro, 29 F.3d 771, 775 (1st Cir. 1994), cert. denied, 115 S. Ct. 947 (1995).[2] We find no abuse of discretion in this case. Serna-Vega specifically challenges only two statements. First, he challenges the testimony of Velez-Torres that Serna-Vega said: "Look, Ayala, if he has the capacity, ask for a hundred, because fifty, I can distribute that in two or three days." Second, he challenges the testimony of Velez-Torres that Serna-Vega said that "the white car is so big, has such a big trunk, that they could get fifty kilos into it, twenty-five in the Chevrolet and twenty-five in the one the old man has, and there's your hundred." These statements were contrary to Serna-Vega's position during trial. Accordingly, they were admissible through Velez-Torres as admissions against interest under Federal Rule of Evidence 801(d)(2)(A). See United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985).[3]
 
 III.
 
 13
 Serna-Vega argues that the district court erred in not providing a multiple conspiracy jury instruction. Serna-Vega did not request such a jury charge, nor did he object to the court's instructions. Consequently, he has the high burden of establishing that the trial court's failure to give a multiple conspiracy charge amounted to "plain error." See United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844 (1987); Fed. R. Crim. P. 52(b). Plain errors are "those so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings." United States v. Alvarado, 982 F.2d 659, 663 (1st Cir. 1992). It follows that such errors will be noticed only in "exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." Griffin, 818 F.2d at 100 (quoting Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir. 1966)); United States v. Ocasio-Rivera, 991 F.2d 1, 3 (1st Cir. 1993). The test for plain error, in this context, is whether there is a prejudicial variance between the conspiracy charged in the indictment and the evidence adduced at trial. See United States v. Thomas, 895 F.2d 51, 55 (1st Cir. 1990). A variance will be deemed prejudicial only if it affects the substantial rights of the accused. Id.
 
 
 14
 The indictment charged a single conspiracy involving an agreement to purchase approximately one hundred kilograms of cocaine. The government introduced evidence from which the jury could infer that the negotiations for the purchase of the cocaine took place over a period of several weeks, and that the object of the conspiracy was, at all times, the eventual transfer of one hundred kilograms of cocaine. There was evidence which, if credited by the jury, established that the conspiracy began in early March 1993 when informant Velez-Torres made his initial visit to Ayala-Rodriguez' car dealership. The jury heard testimony that Ayala-Rodriguez originally offered to purchase fifty kilograms of cocaine, but that Serna-Vega encouraged him to buy one hundred kilograms. Negotiations between the appellants and the government agent continued over the next few days. During a taped telephone conversation, Serna-Vega told Velez-Torres that Ayala-Rodriguez was still interested in purchasing the cocaine they discussed at the initial meeting. He stated further that he wanted to buy two kilos first as a sample, and that he would then bring together money for fifteen kilos. Velez-Torres testified that it was common in drug transactions of this size for the buyer to purchase a sample of the drugs before making the final purchase. He testified that the conversations regarding the two and fifteen kilos were part of the larger deal for one hundred kilos.
 
 
 15
 The continuing negotiations between the defendants and the government agents support the single conspiracy charge. Velez- Torres testified that Ayala-Rodriguez showed him a deed to his dealership property, a deed of sale for a house he owned, and automobile registration titles to establish that Ayala-Rodriguez had the necessary collateral to complete the large scale drug transaction. Finally, appellants took three cars to make the scheduled pick-up, and the evidence indicated that Ayala-Rodriguez intended to have a fourth car delivered to help carry the cocaine. Serna-Vega assured him that three cars would be enough because one car could carry fifty kilos and the other two could carry twenty- five each.
 
 
 16
 The totality of the evidence indicates a single conspiracy to purchase one hundred kilograms of cocaine. We find no prejudicial variance between the indictment and the evidence adduced at trial. Accordingly, the court's failure to provide a multiple conspiracy charge was not error, much less plain error.
 
 IV.
 
 17
 Serna-Vega challenges two findings by the district court with respect to his sentence. First, he challenges the district court's finding that he was a manager or supervisor of the possession offense under Sec. 3B1.1(c) of the United States Sentencing Guidelines. We review only for clear error. United States v. Jadusingh, 12 F.3d 1162, 1169 (1st Cir. 1994).
 
 
 18
 Under Sec. 3B1.1, a sentencing court may increase a defendant's base offense level by two points if the evidence establishes that the crime involved two or more people and the defendant "was an organizer, leader, manager, or supervisor" of the criminal activity. An enhancement is appropriate if the evidence demonstrates that the defendant "exercised some degree of control over others involved in the commission of the crime." Id. (quoting United States v. De La Cruz, 996 F.2d 1307, 1315 (1st Cir.), cert. denied, __ U.S. __, 114 S. Ct. 356 (1993)) (other citation omitted).
 
 
 19
 There was ample evidence presented in this case from which the sentencing court could conclude that Serna-Vega exercised some supervisory control of others involved in the criminal activity. Special Agent Moran testified that Ayala-Rodriguez introduced Serna-Vega as his "right-hand man." Informant Velez-Torres testified that Ayala-Rodriguez told him that he wanted to buy fifty kilograms of cocaine, and that Serna-Vega suggested that Ayala-Rodriguez ask for one hundred kilos because Serna-Vega could distribute fifty in two or three days. It was Serna-Vega who conducted the initial negotiations-via two recorded telephone conversations-with Velez-Torres for the purchase of the cocaine. Finally, Serna-Vega was present for the meeting in which Ayala- Rodriguez and Agent Moran discussed who would pick up the cocaine, and Serna-Vega objected to a certain person being included in the drug pick-up.
 
 
 20
 The evidence thus indicates that Ayala-Rodriguez delegated a certain amount of responsibility to Serna-Vega and that he acted, indeed, as Ayala-Rodriguez' right-hand man. The evidence also indicates that, in this relatively powerful position, he exercised supervisory control over Ramos-Santiago. The court could infer from the evidence presented at trial that Ramos-Santiago was Serna-Vega's friend and that Serna-Vega recruited his assistance in the drug transaction. It was Serna-Vega who brought Ramos-Santiago to San Juan on the day of the scheduled pick-up.
 
 
 21
 Based on the foregoing, we conclude that the district court's finding that Serna-Vega was a manager or supervisor of the offense conduct was not clearly erroneous.
 
 
 22
 Serna-Vega also contends that the trial court erred in considering the full hundred kilos of cocaine in computing his base offense level under the sentencing guidelines. Serna-Vega argues that the court should have found that he was not reasonably capable of producing the purchase money for the full amount of drugs and, therefore, that only the eleven kilos he actually purchased should have been considered for sentencing. See U.S.S.G. Sec. 2D1.1 n.12. For sentencing, the government need prove relevant facts only by a preponderance of the evidence, and we review the sentencing court's findings only for clear error. United States v. Cetina-G omez, 951 F.2d 432, 434-35 (1st Cir. 1991).
 
 
 23
 The jury found Serna-Vega guilty of participating in a conspiracy to possess with intent to distribute one hundred kilograms of cocaine. In addition, there was ample evidence from which the court could determine that the members of the conspiracy, principally Ayala-Rodriguez, could raise the money to complete the transaction. The evidence indicated that Ayala-Rodriguez intended to put up his car dealership, including the cars to which he owned title, and some real property he owned, as collateral for the transaction. Under these circumstances, we conclude that the court's finding with respect to drug quantity was not clearly erroneous.
 
 V.
 
 24
 Appellants raise one final argument which requires only brief discussion. On the first day of trial, the court instructed the jury that Serna-Vega and Ramos-Santiago had pled not guilty and, therefore, that issues of fact had to be tried by the jury. Appellants contend that this instruction implied that other co- defendants named in the indictment had pled guilty and that appellants were prejudiced by this implication. Appellants maintain that the court should have given a cautionary instruction with respect to the missing co-defendants. Neither appellant requested such an instruction and, therefore, we review only for plain error. Alvarado, 982 F.2d at 663.
 
 
 25
 We have approved the use of a cautionary instruction in cases where co-defendants plead guilty after trial has commenced. See, e.g., United States v. Chapdelaine, 989 F.2d 28, 32 (1st Cir. 1987) (approving court's admonishment that jurors not speculate as to the reason for the co-defendants' absence). The same concerns are not implicated in this case because the co-defendants pled guilty prior to the commencement of the trial. Therefore, the jurors never saw the co-defendants and would have no reason to speculate about their sudden absence from the courtroom. Moreover, there was no suggestion at trial as to how the charges against the other co-defendants had been disposed. Under these circumstances, we discern no plain error in the court's failure to provide, sua sponte, a cautionary instruction with respect to the missing co- defendants.
 
 CONCLUSION
 
 26
 For the foregoing reasons, appellants' convictions and sentences are affirmed.
 
 
 
 [1]
 Ayala-Rodriguez had informed them at the pier that the two cars he was waiting for were not going to be delivered
 
 
 [2]
 We review a district court's decision whether to admit co- conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E), however, under a clearly erroneous standard because the decision is predicated on the court's findings of fact in applying the Petrozziello test (supra ). See McCarthy, 961 F.2d at 977; United States v. Patterson, 644 F.2d 890, 894 (1st Cir. 1981)
 
 
 [3]
 Serna-Vega alludes generally to other alleged hearsay statements, but does not specifically identify any challenged statements. We cannot conduct effective appellate review of an evidentiary ruling admitting co-conspirator statements absent reference to the challenged statement. United States v. Isabel, 945 F.2d 1193, 1199 (1st Cir. 1991). Accordingly, we reject appellant's general arguments with respect to alleged hearsay statements