UNITED STATES, Appellee,

v.

Charles E. DANIELS, Defendant,
Appellant.

No. 92–2006.

United States Court of Appeals,
First Circuit.

Heard Aug. 5, 1993.

Decided Aug. 30, 1993.

Robert J. Carnes, Pittsfield, MA, by ap-
pointment of the Court, for defendant, appel-
lant.

C. Jeffrey Kinder, Asst. U.S. Atty., with
whom A. John Pappalardo, U.S. Atty., Bos-
ton, MA, was on brief, for appellee.

Before CYR and STAHL, Circuit Judges,
and FUSTE,* District Judge.

STAHL, Circuit Judge.

A federal jury convicted defendant Charles
Daniels ("Daniels") of illegal possession of a
firearm by a convicted felon, a violation of 18
U.S.C. § 922(g)(1). The district court sen-
tenced Daniels to fifteen years imprisonment,
the mandatory minimum sentence under the
Armed Career Criminal Act ("ACCA"), 18
U.S.C. § 924(e)(1). On appeal, Daniels
claims that: 1) the indictment against him
should have been dismissed as a result of the
government's violation of the Interstate
Agreement on Detainers ("IAD"); 2) his trial

* Of the District of Puerto Rico, sitting by designa-     tion.

counsel was constitutionally ineffective; 3) the district court failed to properly instruct the jury on the government's burden of proof; and 4) the district court improperly sentenced him under the ACCA. Finding these claims meritless, we affirm.

## I.

### Factual Background and Prior Proceedings

We recount the facts in the light most favorable to the prosecution. *United States v. Alvarez*, 987 F.2d 77, 79 (1st Cir.1993), *petition for cert. filed*, — U.S.L.W. — (U.S. June 9, 1993) (No. 92–9080). A Massachusetts investigation of Daniels and his girlfriend, Deborah Hill ("Hill"), culminated on November 17, 1989, with the execution of search warrants at their respective residences. The warrants authorized a search for cocaine, cocaine paraphernalia, and records related to the purchase and sale of cocaine.

Prior to the search of Hill's residence, Daniels had been observed leaving his apartment carrying a brown nylon bag. He drove to Hill's residence and entered her home with the bag. At approximately 7 p.m., five Massachusetts State Troopers forcibly entered Hill's residence in order to execute the warrant. Three of the troopers, having entered the apartment by way of its kitchen, moved forward towards other portions of the apartment. As one trooper, Lt. McDonald, reached the entrance to a bedroom, he observed Daniels, in the middle of the room, "crouched" over the brown bag with his hand inside it. As Daniels looked up, McDonald and two other troopers rushed toward him and pushed him onto a bed. Following a struggle, the troopers handcuffed Daniels and removed him from the scene.

While the three troopers were subduing Daniels, Trooper Thomas Kerle's cursory search of the brown bag revealed cocaine and cocaine paraphernalia. A more complete search of the bag, performed after Daniels was removed from the room, yielded a loaded Browning .38 caliber semi-automatic pistol and approximately $1,000 cash. A subsequent execution of the warrant to search

Daniels's residence netted 17 rounds of .38 caliber ammunition which matched that removed from the gun found in the brown bag.

Daniels pled guilty to cocaine related charges in Hampshire County (Mass.) Superior Court and was sentenced to three to six years imprisonment. On March 5, 1992, he was indicted by a federal grand jury on a charge of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

At trial, the various state troopers involved in the case, as well as both Hill and Daniels, testified. Hill testified that she assisted Daniels in the distribution of cocaine and collection of cocaine related debts. She also testified that the brown bag was one that she had previously bought for Daniels. Finally, she testified that the contents of the bag belonged to Daniels and that she had never seen the gun before the police showed it to her. Daniels admitted that he and Hill used and sold cocaine. He also admitted that the brown nylon bag, the seized cocaine and paraphernalia were his. He denied, however, that he was reaching into the bag at the time McDonald sighted him, and also claimed that he had never before seen the gun at issue. The jury deliberated approximately two hours before returning a guilty verdict.

## II.

### Discussion

#### A. Ineffective Assistance of Counsel

Daniels argues that his trial counsel's performance was constitutionally infirm because: 1) she withdrew a motion to suppress evidence seized during the search of Hill's apartment; and 2) she cross-examined Hill about her drug activity, thereby "opening the door" to admission of evidence regarding Daniels's own drug involvement. We, however, need not address these claims because they are not properly before us. A brief explanation follows.

It is well settled in this circuit that a claim of ineffective assistance of counsel will not be resolved on a direct appeal where the claim was not raised in the district court, unless the critical facts are not in dispute and

a sufficiently developed record exists. *United States v. Georgacarakos*, 988 F.2d 1289, 1297–98 (1st Cir.1993). Instead, such a claim is to be pursued in a collateral proceeding under 28 U.S.C. § 2255. *Id.* at 1298. Here, appellant does not argue that he raised this issue below. Moreover, our review of the record demonstrates that both of Daniels's claims are heavily dependent on the factual circumstances surrounding each of the allegedly deficient actions taken by trial counsel. Accordingly, we do not reach Daniels's ineffective assistance of counsel claim.

## B. Interstate Agreement on Detainers

■ Daniels next argues that the indictment should have been dismissed because his rights under the IAD, 18 U.S.C.App. II, § 2, art. IV(e)[1], were violated when he was twice transferred from Massachusetts to federal custody for purposes of arraignment. We disagree.

At the time of his federal indictment, Daniels was incarcerated in a Gardner, Massachusetts facility ("Gardner"), serving his sentence on the state drug charges. On March 6, 1992, the day after his federal indictment, the district court, *sua sponte*, issued a writ of *habeas corpus ad prosequendum* to the warden at Gardner, ordering Daniels's production on March 20, 1992, for arraignment on the federal indictment. On March 9, 1992, the United States Marshal's Service lodged a detainer with the Gardner warden, notifying him of the pending federal charges against Daniels.

Daniels made his initial appearance before a United States Magistrate Judge on March 20, 1992. After being advised of the charge against him, Daniels requested court-appointed counsel. The arraignment was continued to March 30, 1992, so that counsel could be present. Daniels was returned to Gardner that same day. The district court, meanwhile, issued a second writ, ordering the Gardner warden to produce Daniels on March 30, 1992.

Daniels appeared for arraignment on March 30, 1992, with appointed counsel, and entered a not guilty plea. A discovery and motion schedule was set, and Daniels was returned to Gardner, where he remained until his federal trial.

Daniels's argument for dismissal is based on a literal reading of Article IV(e). Strictly speaking, the argument is not without merit. In this circuit, however, we have firmly held that "common sense rejects that literal application." *United States v. Taylor*, 947 F.2d 1002, 1003 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2982, 119 L.Ed.2d 599 (1992). Instead, we have held—as have several other circuits—that a brief interruption in state prison confinement for purposes of arraignment, where the prisoner is returned to state custody the same day, does not violate the IAD. *Id.; United States v. Taylor*, 861 F.2d 316, 319 (1st Cir.1988); *see also Baxter v. United States*, 966 F.2d 387, 389 (8th Cir. 1992) (removal from state custody for few hours for arraignment and plea does not violate IAD); *United States v. Johnson*, 953 F.2d 1167, 1171 (9th Cir.) (five different transfers from state custody to federal court did not violate IAD), *cert. denied*, —— U.S. ——, 113 S.Ct. 226, 121 L.Ed.2d 163 (1992); *United States v. Roy*, 830 F.2d 628, 636 (7th Cir.1987) (overnight removal did not violate IAD), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); *United States v. Roy*, 771 F.2d 54, 60 (2d Cir.1985) (same), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986). *But see United States v. Schrum*, 638 F.2d 214, 215 (10th Cir.1981) (whenever prisoner is transferred, however briefly, IAD is violated and charges must be dismissed), *aff'g* 504 F.Supp. 23 (D.Kan. 1980); *United States v. Thompson*, 562 F.2d 232, 234 (3d Cir.1977) (en banc) (same), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978).

The rationale behind our interpretation of the IAD is that a brief interruption in state custody poses no threat to the prisoner's rehabilitation efforts, the main purpose of the Act. *Taylor*, 947 F.2d at 1003; *United*

---

1. Pursuant to Article IV(e) of the IAD, "[i]f trial is not had on any indictment ... contemplated hereby prior to the prisoner's being returned to the original place of imprisonment ... such indictment ... shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

*States v. Mauro*, 436 U.S. 340, 349, 98 S.Ct. 1834, 1841, 56 L.Ed.2d 329 (1978). Indeed, as we have noted, such interruptions may be advantageous to a defendant. *See, e.g., Taylor*, 947 F.2d at 1003 (securing speedy arraignment). Here, Daniels has alleged no hindrance to the rehabilitative efforts of his state incarceration.[2] Finally, Daniels tries to distinguish both *Taylor* cases because they involved single transfers, while Daniels was twice transferred. We find this distinction to be of no legal moment, especially, where, as here, the second transfer was effected to secure Daniels's right to counsel. Accordingly, we reject Daniels's claim under the IAD.

### C. Sentencing Under the ACCA

Pursuant to the ACCA, a felon convicted of possessing a firearm must receive a minimum sentence of fifteen years if he has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). To support the ACCA sentence enhancement, the government introduced into evidence at the sentencing hearing certified copies of Daniels's convictions for attempted assault in 1965, attempted robbery in 1970, rape in 1973, and reckless endangerment and assault in 1986. At the sentencing hearing, Daniels argued that the 1973 rape and 1986 reckless endangerment and assault convictions were invalid predicates because he was not represented by counsel during the relevant proceedings.

 On appeal, Daniels embarks on a different course. He now argues that the 1965, 1970, and 1973 convictions are too old to be used as predicate offenses.[3] This claim is meritless.

Not only does the ACCA lack a limitations period on predicate crimes, but appellate courts have uniformly rejected attempts to create such a limitation. *See United States v. Alvarez*, 972 F.2d 1000, 1006 (9th Cir.1992) (predicate convictions more than fifteen years old), *cert. denied*, —— U.S. ——, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993); *United States v. Blankenship*, 923 F.2d 1110, 1118 (5th Cir.) (predicate convictions more than twenty years old), *cert. denied*, —— U.S. ——, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991); *United States v. McConnell*, 916 F.2d 448, 450 (8th Cir.1990) (same); *United States v. Preston*, 910 F.2d 81, 89 (3d Cir.1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1002, 112 L.Ed.2d 1085 (1991); *United States v. Green*, 904 F.2d 654, 655 (11th Cir.1990) (same). We similarly decline Daniels's invitation to create such a limitations period, and find that he was properly sentenced pursuant to the ACCA.

### D. Jury Instructions

Daniels's final claim is that the district court failed adequately to instruct and define for the jury the government's burden of proof. As no objection to the court's instruction was made at trial, we review only for plain error. Fed.R.Crim.P. 52(b); *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (reversal for plain error warranted only where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings"). We have read the charge and find no plain error.[4]

Based on the foregoing, appellant's conviction and sentence are ***affirmed.***

---

2. In fact, as the government correctly points out, literal application of the IAD could frustrate its goals. If we accept Daniels's argument for purposes of this case, he would have been removed from state custody from the original date of his federal arraignment, March 20, 1992, until the date of his disposition, August 3, 1992. We can hardly think of a greater disruption in rehabilitative services.

3. In his brief, appellant also argued that the district court improperly used as a predicate Daniels's underlying drug conviction and also improperly considered his 1986 convictions for assault and reckless endangerment as separate predicate offenses. These contentions, however, were waived at oral argument.

4. Indeed, appellant's counsel termed this claim "insupportable," and filed the relevant section of the brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).