USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 92-2299 UNITED STATES, Appellee, v. DESMOND JADUSINGH, Defendant, Appellant. ____________________ No. 92-2404 UNITED STATES, Appellee, v. KAREN WHITAKER, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Rachel Brill with whom Benicio Sanchez Rivera was on brief for ____________ _______________________ appellant Jadusingh. Luz M. Rios Rosario for appellant Whitaker. ___________________ Desmond Jadusingh pro se. _________________ Jeanette Mercado Rios, Assistant United States Attorney, with _______________________ whom Charles E. Fitzwilliam, United States Attorney and Jose A. ________________________ _______ Quiles-Espinosa, Senior Litigation Counsel, were on brief for _______________ appellee. ____________________ January 4, 1994 ____________________ STAHL, Circuit Judge. After a three-day jury ______________ trial, defendants-appellants Desmond Jadusingh and Karen Whitaker were convicted of conspiring to import approximately two kilograms of cocaine into the customs territory of the United States in violation of 21 U.S.C. 952 and 963. Appellants also were convicted of conspiring to possess with intent to distribute the same cocaine in violation of 21 U.S.C. 841(a)(1) and 846. On appeal, both raise a host of challenges to their convictions. Finding no reversible error, we affirm. I. I. __ FACTUAL BACKGROUND FACTUAL BACKGROUND __________________ Because defendants challenge the sufficiency of the evidence to support their convictions, we summarize the evidence in the light most favorable to the government. See, ___ e.g., United States v. Mena-Robles, 4 F.3d 1026, 1029 (1st ____ _____________ ___________ Cir. 1993). Donna Marie Carr is the mother of Kimberly Miller. In the summer of 1991, Carr was approached by Miller's boyfriend, Desmond Jadusingh, and asked to participate in an international drug smuggling venture. Jadusingh wanted Carr to travel with two couriers he had recruited, Miller and Karen Whitaker, so that Carr could learn the operation and step in if either Miller or Whitaker backed out. The trip was planned for January 1992. -2- 2 As the date of departure drew near, Carr approached Pittsfield, Massachusetts, police officer Timothy Surrell about the venture. He, in turn, alerted the Massachusetts Drug Enforcement Agency ("MDEA") and arranged for two MDEA agents to join him in a meeting with Carr. The group gathered at a local restaurant, where Carr told Surrell and the agents that she would be meeting with Jadusingh later in the day to finalize the arrangements. Fearing that she would not remember all of the anticipated conversation, Carr volunteered to wear a concealed wire to the rendezvous at Jadusingh and Miller's apartment. That evening, Carr recorded a conversation in which Jadusingh, Whitaker and Miller discussed their plans to travel to Puerto Rico to purchase and import two kilograms of cocaine. Meanwhile, DEA agents and local police, in a nearby parking lot, listened to the live transmission of the conversation. Two days later, on January 16, 1992, Carr drove Jadusingh, Whitaker and Miller from Pittsfield to Jadusingh's house on Long Island, New York, where Jadusingh gathered money and clothing for the trip. The following morning, Jadusingh's brother drove all four to Kennedy International Airport, where they boarded a plane for Puerto Rico. Upon arrival, the group, under surveillance by officers of the federal Drug Enforcement Administration ("DEA"), traveled to the Holiday Inn Crown Plaza in Carolina, Puerto Rico. All -3- 3 three of the women stayed in room 519 while Jadusingh, who wanted to keep his distance from the women, stayed in room 309, which was registered to a Karen Bailey.1 Whitaker and Carr were instructed by Jadusingh not to mention his name in public and to contact him only by phone. They were provided a telephone credit card number to charge calls as needed. For the most part, Jadusingh rationed out instructions and money through Miller on an as-needed basis. He also demanded receipts for all expenses. Shortly after arriving in Puerto Rico, the group was informed by its drug contact, Etlyn, that there was an unexpected change of plans. Jadusingh's cocaine had not been unloaded in Puerto Rico as expected, and would have to be picked up in Curacao.2 While Jadusingh remained in Puerto Rico, the three women, accompanied by surveilling undercover DEA agents, traveled to Curacao to pick up the cocaine. Once there, Miller met with a man known only as Junior and exchanged $5800 of Jadusingh's money for approximately two kilograms of cocaine. In an attempt to compensate for the unplanned detour, Junior promised an additional two kilograms of cocaine and instructed the women to change hotels and await delivery. ____________________ 1. Karen Whitaker is also known as Karen Bailey. 2. Curacao is the main island of the Netherlands Antilles, off the northwest coast of Venezuela. -4- 4 Meanwhile, Miller and Whitaker purchased razor blades, plastic baggies, tape and girdles. With the help of Carr, the two women divided and packed the cocaine according to Jadusingh's instructions. Jadusingh, who was in frequent phone contact with his couriers, directed them to bring the cocaine back to the United States by way of St. Martin and St. Thomas. According to Jadusingh, smuggling cocaine through customs in St. Thomas was easier than through customs in Puerto Rico. When Jadusingh subsequently discovered that he could not fly to St. Thomas without a passport, however, he told the women to abandon Junior's additional delivery and return immediately to the Holiday Inn in Puerto Rico. On January 23, 1992, Miller and Whitaker taped the baggies containing the cocaine to their stomachs and further secured the contraband with the girdles. Together with Carr, they boarded a plane bound for Aruba. After spending the night in Aruba, Miller and Whitaker again secured the cocaine to their bodies and boarded a plane for Puerto Rico. Meanwhile, at Puerto Rico's Luis Munoz Marin International Airport, Senior Customs Inspector Sonia Maldonado was alerted by DEA agents that two persons would be arriving from Aruba with contraband. Maldonado, who was not told which passengers would be carrying the drugs, became suspicious of Whitaker and Miller because they were wearing bulky winter jackets on what she described as a particularly hot day. A -5- 5 personal search of Whitaker by Maldonado and of Miller by Senior Customs Inspector Maria Esquilin uncovered approximately two kilograms of a concealed white powder which was field tested and found to be cocaine. After completing the search, Maldonado delivered Whitaker to DEA agent Eric Johnson. Jadusingh was arrested at the Holiday Inn later that day. On February 5, 1992, a grand jury returned a two- count indictment against Jadusingh, Miller and Whitaker. Count one charged the defendants with conspiracy to import cocaine from Aruba to the United States in violation of 21 U.S.C. 952 and 963. Count two charged the defendants with conspiracy to possess with intent to distribute the same cocaine in violation of 21 U.S.C. 841(a)(1) and 846. The defendants pled not guilty at their arraignment. Jadusingh and Whitaker were tried without Miller, who fled after being released on bail and was later arrested and tried separately. Carr was the government's lead witness at the trial. Jadusingh and Whitaker were convicted on both conspiracy counts. II. II. ___ DISCUSSION DISCUSSION __________ On appeal, Jadusingh and Whitaker together primarily argue: (1) the court erred in allowing Donna Carr to testify; (2) the court impermissibly admitted an audiotape -6- 6 into evidence; and (3) the court erred in denying their respective Rule 29 motions for acquittal.3 Jadusingh further contends 1) that the district court improperly enhanced his sentence, and 2) that he was denied effective assistance of counsel.4 We discuss each argument in turn. A. Donna Carr A. Donna Carr ______________ Jadusingh and Whitaker argue that the district court erred in allowing Donna Carr, the government's confidential informant and lead witness, to testify. Specifically, the defendants claim (1) that the court should have excluded Carr's testimony because the government failed to disclose Carr's criminal history in violation of Brady v. _________ Maryland, 373 U.S. 83 (1963); and (2) that the trial judge ________ precluded Jadusingh's attorney from effectively cross- examining Carr. We find both of these arguments to be without merit. 1. Brady Violations 1. Brady Violations ____________________ In Brady, the Supreme Court held that "the _____ suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of ____________________ 3. Pursuant to Fed. R. Crim. P. 29, "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction . . . ." 4. Jadusingh makes his ineffective assistance of counsel claim in a supplemental brief he filed pro se. ___ __ -7- 7 the good faith or bad faith of the prosecution." Id. at 87. ___ The purpose of the Brady rule is "to prohibit the prosecution _____ from intentionally withholding `evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trail.'" United States v. Valencia-Lucena, 925 F.2d ______________ _______________ 506, 514 (1st Cir. 1991)(quoting United States v. Bagley, 473 _____________ ______ U.S. 667, 675 (1985)). The rule is not, however, intended to "`displace the adversary system as the primary means by which truth is uncovered.'" Id. (quoting Bagley, 473 U.S. at 675). ___ ______ Here, there was no Brady violation. Although the _____ government did not disclose Carr's 1978 misdemeanor drug conviction until just before the start of the first day of trial, it is uncontested that the government did not actually learn of this conviction until that same day.5 Moreover, Carr's other past substance abuse and outstanding traffic violations were fully disclosed during the direct and cross- examination of Carr at trial. Given this full disclosure of Carr's background by the government, we are at a loss to comprehend defendant's argument that the government committed a Brady violation.6 See id. at 514 (government failure to _____ ___ ___ ____________________ 5. We further note that defendants, although knowing about the 1978 conviction, did not raise it at trial. 6. Jadusingh and Whitaker also cursorily argue that the government knowingly allowed Carr to present false testimony to the jury. See United States v. Wallach, 935 F.2d 445 (2d ___ _____________ _______ Cir. 1991)(reversing conviction where government knowingly allowed star witness to perjure himself). Having carefully reviewed all of the alleged "inconsistencies" adduced in -8- 8 turn over evidence of confidential informant's drug use was not Brady violation where issue was fully revealed at trial). _____ 2. Cross Examination 2. Cross Examination _____________________ Jadusingh next argues that the trial judge unfairly limited the scope of his cross-examination of Carr. In support of this argument, however, Jadusingh offers only the following colloquy between his lawyer and Carr: Q. After 1985 how many warrants for your arrest did you have? A. Five. Q. You had five arrest warrants pending, you never have stated that? [Government]: Objection, Your Honor. The Court: Sustained. After the trial court sustained the government's objection, Jadusingh's attorney neither attempted to reformulate his query, nor asked the trial judge for a clarification of his ruling. Instead, the attorney wholly abandoned this particular line of questioning of Carr, and moved on to an unrelated topic. When challenging an exclusionary ruling like the one before us, the aggrieved party must show 1) that a substantial right was affected, and 2) that the "substance of the evidence [sought to be introduced] was made known to the court by offer or was apparent from the context within which ____________________ support of this argument, however, we find it to be baseless. -9- 9 questions were asked." Fed. R. Evid. 103 (a) (2). In the absence of this minimal showing, our review is limited to "plain error." Fed. R. Evid. 103(d). In order to show plain error, the complaining party must demonstrate "that justice has miscarried or that the trial's basic fairness has been compromised." United States v. Hadfield, 918 F.2d 987, 995 _____________ ________ (1st Cir. 1990), cert. denied, 111 S. Ct. 2062 (1991). We _____ ______ find no such error here. We begin by noting that the question posed by Jadusingh's counsel at trial related solely to Carr's arrest warrants after 1985. The only evidence in the record _____ regarding Carr's criminal history for this time period is her testimony on direct examination that she had pending traffic violations. Nothing in the record remotely intimates that further cross-examination on this subject would have uncovered evidence of other wrong-doing on the part of Carr or would have been of any value to Jadusingh. Nor has Jadusingh offered any information on appeal tending to show that further cross-examination on this subject was warranted. Further, it is not apparent from the record that the district court intended to restrict Jadusingh's substantive inquiry into Carr's outstanding warrants. It is equally plausible that the government objected to the argumentative tone of the question. Thus, we cannot say that -10- 10 the fairness of Jadusingh's trial was affected by the district court's restriction of Jadusingh's cross-examination of Carr.7 B. Admission of Tape Recording B. Admission of Tape Recording _______________________________ Jadusingh and Whitaker next argue that it was error for the court to permit the jury to listen to the audiotape of the meeting between Carr, Jadusingh, Whitaker and Miller at Jadusingh and Miller's apartment. In so doing, they contend that the trial court should have excluded the tape because it was inaudible. Jadusingh further argues that he was prejudiced by the prosecutor's reference to the substance of the tape in her closing remarks. We disagree. 1. Audibility and Admission of the Tape 1. Audibility and Admission of the Tape ________________________________________ The decision to admit or exclude an audiotape rests with the trial judge, who must decide "whether `the inaudible parts are so substantial as to make the rest [of the tape] more misleading than helpful.'" United States v. Font- ______________ _____ ____________________ 7. Jadusingh also charges that the district court's ruling violated his right to confront Carr in violation of the Sixth Amendment. We fail to see the merit of this argument. A criminal defendant's Sixth Amendment right to confront witnesses against him/her is not absolute. It may, of course, be violated when the defendant is prohibited from engaging in cross-examination which is not repetitive, harassing or otherwise improper, but, rather, is designed to show a "prototypical form of bias on the part of the witness and thereby to expose to the jury information on the witness's reliability." United States v. Osorio, 929 F.2d ______________ ______ 753, 759 (1st Cir. 1991). Here, the question posed by Jadusingh's counsel was argumentative and, therefore, properly excluded as improper cross-examination. See id. at ___ ___ 760. -11- 11 Ramirez, 944 F.2d 42, 47 (1st Cir. 1991) (quoting United _______ ______ States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986)), cert. ______ _______ _____ denied, 112 S. Ct. 954 (1992). As we have held on numerous ______ occasions, a trial judge's ruling on the admission of recordings is afforded "broad discretion," even where portions of the taped conversation are unintelligible. See, ___ e.g., Font-Ramirez, 944 F.2d at 47. ____ ____________ We have listened to the tape and conclude that the district court acted within its discretion in ruling that the tape as a whole was not more misleading than helpful. Although much of what Jadusingh and Whitaker say is drowned out by intermittent television noise, Carr's words are easily understandable as she repeatedly paraphrases statements made by each defendant to his or her discernable approval. Furthermore, Carr's audible questions regarding money, travel arrangements and customs are addressed to, and answered by, Jadusingh, thereby corroborating much of Carr's direct testimony that Jadusingh was in control of the overall venture. See id. We therefore affirm the district court's ___ ___ admission of this tape.8 ____________________ 8. Jadusingh also argues that the tape should have been excluded because the government neither provided a written transcript nor established a chain of custody. As to the first of these arguments, it is established that "a transcript is not a prerequisite for the admission of recorded conversations." United States v. Panzardi-Lespier, _____________ ________________ 918 F.2d 313, 319 (1st Cir. 1990). As to the second argument, we agree with the Second Circuit that, once the government has established both authenticity and accuracy, -12- 12 2. Prosecutorial Misconduct 2. Prosecutorial Misconduct ____________________________ Jadusingh argues that he was prejudiced by the prosecutor's substantive reference to the audiotape in her closing remarks. More specifically, Jadusingh objects to references made by the prosecutor to the jury that statements allegedly made by Jadusingh were audible and that the jury would be able to hear Jadusingh "speaking about being watchful for dogs that would be sniffing" at the airport. Jadusingh, however, failed to object to this reference at trial so, once again, we review for plain error. See ___ Hadfield, 918 F.2d at 995. ________ Even if we were to assume that the prosecutor's reference to the tape was erroneous, the reference would not constitute plain error. First of all, the trial court provided the jury with a limiting instruction directing them ____________________ sufficient foundation has been laid for the tape's admission without proof of chain-of-custody. See United States v. ___ ______________ Steinberg, 551 F.2d 510, 515 (2d Cir. 1977). We note that _________ the government, through Carr, properly authenticated the tape and identified the voices. See Font-Ramirez, 944 F.2d at 47. ___ ____________ Whitaker argues that the court erred in allowing the jury to listen to the tape because it was never formally moved into evidence. Because Whitaker failed to raise this objection below, we review this argument under a plainly erroneous standard. See United States v. Brennan, 994 F.2d ___ _____________ _______ 918, 925 (1st Cir. 1993). We fail to see how the government's failure to move the tape formally into evidence affected the fundamental fairness of the trial where 1) the government provided the proper foundation to admit the tape, 2) the trial court ruled that the government could play the tape for the jury, and 3) the tape was docketed as Government Exhibit 17. We therefore reject this argument. -13- 13 to disregard inaudible portions of the tape. Moreover, Carr testified, independently of the tape, that Jadusingh had, in fact, warned Carr, Whitaker and Miller of customs dogs. Thus, the very evidence which Jadusingh now objects to had been presented to the jury by an independent source. Finally, an independent review persuades us that evidence of the dog warnings forms a very small and inconsequential piece of the overall evidence which supports Jadusingh's conviction. Accordingly, we find no plain error in the government's reference to Jadusingh's inaudible statements on the tape. C. Sufficiency of the Evidence of Conspiracy C. Sufficiency of the Evidence of Conspiracy _____________________________________________ Both Jadusingh and Whitaker argue that there was insufficient evidence to support their convictions for conspiring to import cocaine into the United States from Aruba in violation of 21 U.S.C. 952 and 963,9 and conspiring to possess with intent to distribute the same ____________________ 9. 21 U.S.C. 952 provides in relevant part that it "shall be unlawful to import into the customs territory of the United States from any place outside thereof . . . [a] controlled substance . . . ." Under 21 U.S.C. 963, any person who conspires to commit the crime above, "shall be subject to the same penalties as those prescribed for the offense." -14- 14 cocaine in violation of 21 U.S.C. 841(a)(1) and 846.10 This argument need not detain us long. When reviewing a sufficiency of the evidence challenge, we examine the evidence in the light most favorable to the government and affirm convictions where any rational juror could have found guilt beyond a reasonable doubt. See United States v. Vavlitis, No. 93-1229, slip op. ___ _____________ ________ at 15 (1st Cir. Nov. 19, 1993). Conspiracy convictions require proof that the defendants entered into an agreement with one another to commit a crime. See United States v. ___ ______________ Concemi, 957 F.2d 942, 950 (1st Cir. 1992). We note that the _______ government may satisfy this burden by direct and/or circumstantial evidence. Valencia-Lucena, 925 F.2d at 512. _______________ Given that the admission of Carr's testimony and the audiotape was not erroneous, Jadusingh's contention that the government failed to produce evidence sufficient to support his convictions is meritless. There is a plethora of direct evidence in the record showing that Jadusingh 1) planned the trip to import the cocaine, 2) recruited and controlled Carr, Whitaker and Miller, and 3) provided the travel money and the funds to purchase the cocaine. ____________________ 10. 21 U.S.C. 841(a)(1) provides in relevant part that "it shall be unlawful for any person knowingly or intentionally" to "possess with intent to . . . distribute . . . a controlled substance." Under 21 U.S.C. 846, any person who conspires to commit the offense described above, "shall be subject to the same penalties as those prescribed for the offense." -15- 15 Moreover, DEA agents observed Jadusingh traveling to Puerto Rico. They listened in on at least one telephone conversation between Jadusingh and Carr while Carr, Whitaker and Miller were in Curacao. And they also observed Jadusingh attempting to purchase an airplane ticket, thereby corroborating Carr's testimony that Jadusingh wanted to meet the women in St. Thomas. Moreover, additional evidence shows that Jadusingh promised to pay the women $1000 each for their efforts and that the women were instructed to deliver cocaine valued at over three hundred thousand dollars ($300,000) wholesale to Jadusingh. Thus, the evidence produced by the government supports a reasonable inference that Jadusingh 1) agreed with Whitaker and Miller to commit the charged offenses; 2) had constructive possession of cocaine; 3) intended to distribute the cocaine, see United States v. ___ _____________ Vargas, 945 F.2d 426, 428-29 (1st Cir. 1991) (holding that ______ one kilogram of cocaine was "large enough to support a fair jury inference that it was not intended merely for personal consumption"), and 4) controlled those who actually imported the cocaine into the United States from Aruba. Whitaker's sufficiency argument is based mainly on her claim that the Customs Inspector who searched her at the Marin Airport in San Juan could not identify her at -16- 16 trial.11 We fail to discern any merit in this argument. Whitaker was identified in court by Carr as one of the coconspirators who planned the trip, handled the money, divided up the cocaine, and attempted to smuggle the drug into the United States from Aruba. Whitaker also was identified in court by DEA agent Johnson, who received custody of Whitaker from Maldonado at the airport, as one of two women who were apprehended deplaning a flight from Aruba with cocaine strapped to their stomachs. In light of the abundance of evidence supporting the convictions of both Jadusingh and Whitaker, we decline the invitation to upset the jury's findings of their respective guilt as to either count. D. Sentencing Enhancements D. Sentencing Enhancements ___________________________ Jadusingh contends that the evidence presented was insufficient to uphold the trial court's two-level sentencing enhancement for his organizational role in the conspiracy.12 Again, we disagree. ____________________ 11. Whitaker also argues at length that Carr was untruthful. On appeal, it is not within our purview to assess the credibility of trial witnesses. See Valencia-Lucena, 925 ___ _______________ F.2d at 512. 12. Under U.S.S.G. 3B1.1, a sentencing judge may increase a base offense level by two if the crime involved two or more people and the defendant "was an organizer, leader, manager, or supervisor" of the criminal activity. Factors to be considered include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the -17- 17 An enhancement under U.S.S.G. 3B1.1 is appropriate if the government has demonstrated that the defendant "`exercised some degree of control over others involved in the commission of the crime.'" United States v. _____________ De La Cruz, 996 F.2d 1307, 1315 (1st Cir.)(quoting United ___________ ______ States v. Fuller, 897 F.2d 1217 (1st Cir. 1990)), cert. ______ ______ _____ denied, 114 S. Ct. 356 (1993). We review role-in-the-offense ______ rulings for clear error. United States v. Cronin, 990 F.2d _____________ ______ 663, 665 (1st Cir. 1993). Here, the sentencing judge based his decision to enhance Jadusingh's sentence upon a reading of the pre- sentence report, and his notes from, and memory of, the trial. The district judge was afforded ample opportunity to ascertain the credibility of Donna Carr as she testified to Jadusingh's control over the drug operation. The record is replete with testimony from Carr that Jadusingh planned and financed the trips to Puerto Rico and Curacao. According to Carr, Jadusingh directed the women's actions. He showed them 1) how to divide up and package the cocaine, 2) how to strap it to their bodies, and 3) how to avoid detection at customs. Jadusingh also provided the money to pay for the trip and the drugs. This evidence clearly supports a finding that ____________________ degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. 3B1.1, comment. (n.3). -18- 18 Jadusingh was the "mastermind behind this offense." Accordingly, we find no clear error in the trial judge's two- level enhancement of Jadusingh's sentence. E. Ineffective Assistance of Counsel E. Ineffective Assistance of Counsel _____________________________________ In his supplemental pro se brief, Jadusingh urges ___ __ this court to consider his claim of ineffective assistance of counsel. Generally, we will not address such a claim raised for the first time on direct appeal unless "the critical facts are not in dispute and a sufficiently developed record exists." United States v. Daniels, 3 F.3d 25, 26-27 (1st _____________ _______ Cir. 1993). The proper forum for factbound issues of ineffective assistance of counsel is in a collateral proceeding under 28 U.S.C. 2255. Id. at 27. ___ The record does not reflect that this issue was raised below. Furthermore, the laundry list of counsel's alleged failures, including the failure to call witnesses, to voir dire the jury, to request a severance and to strike apparent contradictory statements of the government's confidential informant, are sufficiently factbound to preclude our review on the record before us. See id. ___ ___ Accordingly, we decline the invitation to review this claim. III. III. ____ CONCLUSION CONCLUSION __________ -19- 19 The judgment below is affirmed, without prejudice to defendant Jadusingh's right to pursue his ineffective assistance of counsel claim in a collateral proceeding under 28 U.S.C. 2255. Affirmed. _________ -20- 20