USCA1 Opinion

 

 June 24, 1994 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1782 UNITED STATES, Appellee, v. PASCUAL CASIANO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Jack E. Tanner,* Senior District Judge] _____________________ ____________________ Before Breyer,** Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ John B. Shorton for appellant. _______________ Joseph F. Savage, Jr., Assistant United States Attorney, with _______________________ whom Donald K. Stern, United States Attorney, was on brief for _________________ appellee. ____________________ ____________________ ____________________ *Of the Western District of Washington, sitting by designation. **Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). Per Curiam. In this appeal, defendant-appellant __________ Pascual Casiano challenges his convictions for conspiracy, 18 U.S.C. 371, aiding and abetting an attempted extortion under color of official right, 18 U.S.C. 2 and 1951 (hereinafter "the Hobbs Act violation"), making false statements to a grand jury, 18 U.S.C. 1623, and obstruction of justice, 18 U.S.C. 1503. After carefully considering Casiano's appellate arguments, we affirm. I. I. __ BACKGROUND BACKGROUND __________ The facts of this case need not be stated in great detail. Casiano was a used car salesman who lived in Dorchester, Massachusetts. Casiano's codefendant, Daniel Sheehan, was an employee of the City of Boston Inspectional Services Department ("BISD"), which is responsible for issuing towing and building occupancy permits. Sheehan had particular expertise as a member of the "auto team" that issues licenses relating to towing businesses and used car sales in the City of Boston. The evidence adduced at trial established that, over a number of years, Casiano brought people who were seeking assistance with the City's permitting process to Sheehan, and that Sheehan used his position with BISD to help them. There was, however, a catch; Sheehan's "help" did not come free. -2- 2 Although the prosecution's case encompassed several incidents in which Casiano brought people to Sheehan for assistance, it centered on Casiano's and Sheehan's actions with regard to one Jose Arocho in 1991 and 1992. Throughout 1991, Arocho was having trouble obtaining a used car dealer's license from BISD for his business at 25 West Cottage Street in Dorchester. During this same time period, Casiano repeatedly approached Arocho and informed him that he had a friend at BISD who, if paid, would solve his permit problem. At first, Casiano indicated that the problem could be solved for $5,000. Later, the price was set at $10,000. Arocho, however, refused to make any illegal payments. Finally, on September 5, 1991 (and after months of badgering by Casiano), Arocho met with Casiano and Sheehan about his continuing problems. Fearing a shakedown, Arocho surreptitiously taped the meeting. At the meeting, Sheehan and Casiano explicitly stated that Sheehan might be able to help Arocho, but that Sheehan's help would cost $15,000. Arocho did not agree to pay, but kept the door open for additional meetings. Subsequently, Arocho contacted the FBI and, with its assistance, attempted to tape and actually did tape several additional conversations between himself, Casiano, and Sheehan. In June 1992, Casiano and Sheehan appeared before a federal grand jury and falsely testified that they had not -3- 3 attempted to extort illegal payments from Arocho. They also falsely testified that the $15,000 payment was Arocho's idea. In December 1992, the grand jury issued a six-count indictment charging Casiano and Sheehan with the crimes noted in the first paragraph of this opinion. After a five-day jury trial, Casiano and Sheehan were convicted on all counts. This appeal followed. II. II. ___ DISCUSSION DISCUSSION __________ On appeal, Casiano makes two arguments. First, he contends that he was denied his right to the effective assistance of counsel. Second, he argues that his conviction for violating the Hobbs Act must be set aside because he was not acting or purporting to act "under color of official right." See 18 U.S.C. 1951(b)(2). We discuss each ___ argument in turn. A. Right to Effective Counsel A. Right to Effective Counsel ______________________________ Casiano's right to effective assistance of counsel argument arises out of an unfortunate episode which took place in the course of the government's cross-examination of Sheehan, who had taken the stand in his own defense. About halfway through this cross-examination, Casiano's trial counsel objected to a question posed by the prosecutor. The trial court overruled the objection, informing counsel, in effect, that he could not object because the witness was not -4- 4 his client. The prosecutor then posed the same question, and Casiano's counsel again objected. In response, the court told counsel to sit down and dismissed the jury from the courtroom. At this point, the court again informed counsel that he could not object because the witness was not his client. The jury returned and cross-examination continued. During the next several minutes, Casiano's trial counsel interposed several more objections, each of which was summarily overruled. Eventually, the court ordered a short recess and again dismissed the jury from the courtroom. At this point, the court informed Casiano's trial counsel that he was in contempt of court for disregarding the court's order not to object during the government's cross-examination. After the jury returned, Casiano's counsel remained largely silent1 for the rest of the cross-examination. Subsequently, the court sanctioned him. As an initial matter, we note that the record does not reflect that the trial court restricted Casiano's right to object out of concern that the objections were being interposed for an improper purpose such as harassment or delay. Instead, it appears that the court premised its ____________________ 1. At one point, Casiano's counsel exclaimed, "Oh, wait a -- " in response to a question posed by the prosecutor. Sheehan's trial counsel also objected to this question. The trial court sustained the objection. -5- 5 restriction upon a view that counsel had no legal right to object because the witness was not his client. We cannot, however, locate any authority which supports this ruling. Moreover, we see no purpose for such a rule; after all, Sheehan's testimony, which covered aspects of his relationship with Casiano, certainly implicated Casiano's interests. Accordingly, we will proceed under the assumption that the court's restriction was improper. Casiano's right to effective assistance argument is framed in two separate ways. First, Casiano claims that the trial court's actions rendered his counsel constitutionally "ineffective" from the time he was sanctioned to the conclusion of the government's cross-examination of Sheehan. In the alternative, Casiano argues that the court's actions completely deprived him of the right to counsel during this same period. Ordinarily, we do not address ineffective assistance claims raised for the first time2 on direct appeal. E.g., United States v. Jadusingh, 12 F.3d 1162, 1169 ____ _____________ _________ (1st Cir. 1994). In situations like this one, however, where there is no dispute over the critical facts and the record is sufficiently developed, we may exercise our discretion and reach the merits of a newly-raised ineffective assistance ____________________ 2. The record does not indicate that Casiano presented his ineffective assistance claim to the district court in the first instance. -6- 6 argument. See, e.g., United States v. Fermin Ortiz, No. 93- ___ ____ _____________ ____________ 1359, slip op. at 11-12 (1st Cir. May 5, 1994). To demonstrate constitutionally ineffective assistance of counsel, a defendant must establish that (1) counsel's conduct fell below the applicable standard for performance, defined by what s/he knew or should have known at the time s/he made the relevant tactical choices; and (2) that prejudice resulted. Id. at 12. "In this context, ___ `prejudice' means that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different." Id. (applying ___ the standard set forth in Strickland v. Washington, 466 U.S. __________ __________ 668, 687 (1984)). Leaving aside the obvious difficulties in applying the Strickland standard in a context where counsel's __________ complained-of tactical choices were imposed by court order, we conclude that Casiano's ineffective assistance claim must fail for a lack of prejudice. Casiano does not explain how there is a reasonable probability that the proceedings would have turned out differently if his counsel had been allowed to object during that portion of the government's cross- examination in which he was effectively silenced. Indeed, Casiano does not even point to any one question which, in his view, was improper. Moreover, our independent review of the record convinces us beyond any doubt whatsoever that, if any -7- 7 improper question was posed during this period, it did not alter the outcome of the trial. Casiano's deprivation of the right to counsel argument differs from his ineffective assistance argument because, "when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic." Holloway v. ________ Arkansas, 435 U.S. 475, 489 (1978). The Court has been ________ clear, however, that application of the harmless-error rule is appropriate where the deprivation of the right to counsel is limited and does not infect an entire, noncapital criminal proceeding such as this one. See Satterwhite v. Texas, 486 ___ ___________ _____ U.S. 249, 257-58 (1988). We think that the restriction imposed by the trial court here, even if properly viewed as a deprivation of the right to counsel, was so limited in scope and effect that an application of harmless-error analysis is appropriate. See id. And, as we indicated above, we think ___ ___ it beyond any reasonable doubt that the error committed did not contribute to the verdict obtained. See Chapman v. ___ _______ California, 386 U.S. 18, 24 (1967). __________ Accordingly, we reject Casiano's argument that the restriction imposed upon his trial counsel during the government's cross-examination requires reversal of his convictions. -8- 8 B. Hobbs Act Violation B. Hobbs Act Violation _______________________ Casiano's second argument is that his conviction under the Hobbs Act for aiding and abetting an attempted extortion was improper because he was not a public official and therefore could not have been acting "under color of official right." 18 U.S.C. 1951(b)(2) (defining "extortion" as, inter alia, "the obtaining of property from _____ ____ another, with his consent, induced . . . under color of official right"). Because Casiano did not make this argument below, our review is limited to whether his Hobbs Act conviction was plainly erroneous. See Fed. R. Crim. P. ___ 52(b). We discern no error at all in this case. First of all, one need not be an elected or appointed public official even to be convicted as a principal under the Hobbs Act's __ _ _________ "color of official right" provision. See United States v. ___ _____________ Freeman, 6 F.3d 586, 593 (9th Cir. 1993) (collecting cases _______ where nonelected, nonappointed government employees were convicted of official right extortion under the Hobbs Act), cert. denied, 62 U.S.L.W. 3722 (May 2, 1994) (No. 93-8558). _____ ______ Here, however, Casiano was convicted only of aiding and ______ ___ abetting an attempted extortion under color of official ________ right. In order to have been so convicted, the evidence merely had to support a conclusion that Casiano "aid[ed], abet[ted], counsel[ed], command[ed], induce[d], or -9- 9 procure[d]" an attempted extortion under color of official right. See 18 U.S.C. 2(a). Certainly, the evidence was ___ sufficient for the jury to have found that Casiano and Sheehan aided each other and that they attempted to extort money from Arocho. And, Casiano does not and cannot dispute that Sheehan acted under color of official right in wrongfully using his position with BISD in the course of this attempted extortion. See Freeman, 6 F.3d at 593 ("We ___ _______ conclude that the Hobbs Act reaches anyone who actually exercises official powers, regardless of whether those powers were conferred by election, appointment, or some other method."). Thus, because Casiano's conduct clearly fell within the relevant statutory language, his conviction must stand. See United States v. Culbert, 435 U.S. 371, 380 ___ ______________ _______ (1978) ("[T]he statutory language and legislative history of the Hobbs Act impels us to the conclusion that Congress intended to make criminal all conduct within the reach of the statutory language."); see also, e.g., United States v. ___ ____ ____ ______________ Spitler, 800 F.2d 1267, 1278 (4th Cir. 1986) (affirming _______ conviction of non-public official who aided and abetted an extortion under color of official right). Accordingly, we reject Casiano's assertion that his conduct plainly was outside the reach of the Hobbs Act. III. III. ____ CONCLUSION CONCLUSION __________ -10- 10 Having rejected defendant's appellate arguments, we affirm his convictions. Affirmed. Affirmed. ________ -11- 11