In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4035

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JIMMIE ROSS, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 CR 20039--Michael P. McCuskey, Judge.

Argued NOVEMBER 1, 2000--Decided March 14,
2001

Before CUDAHY, COFFEY, and EASTERBROOK,
Circuit Judges.

COFFEY, Circuit Judge.  On June 3, 1998,
a federal grand jury sitting in the
Central District of Illinois returned a
one-count indictment charging Jimmie
Ross, Jr., with being a felon in
possession of a firearm, in violation of
18 U.S.C. sec. 922(g)(1)./1 After the
district judge denied his motion to
dismiss the indictment due to alleged
violations of the Interstate Agreement on
Detainers (IAD),/2 Ross entered into a
written plea agreement in which he
retained the right to challenge the
denial of his motion to dismiss. On
November 22, 1999, the district court
sentenced Ross to 63 months'
imprisonment, three years' supervised
release, and a special assessment of
$100. We affirm.

I.  BACKGROUND/3

   Prior to being the subject of this
federal indictment, Ross was charged in
Illinois state court with unlawful
possession of a controlled substance. On

June 8, 1998, Ross entered a plea of guilty to the state charge of possession of a controlled substance and was sentenced to a term of three years' imprisonment. On June 11, 1998, a federal detainer/4 was lodged against Ross with the Sheriff of Champaign County, Illinois, in conformance with the IAD. On August 10, 1998, Ross delivered to Paul Barnett, the warden of the Danville Correctional Facility, a written demand for a final disposition of the federal charges then pending in conformance with Article III(a) of the IAD. The demand for final disposition Ross delivered to the warden was accompanied with a pre-printed cover memorandum citing the relevant portions of the IAD. It said, in pertinent part:

(b) The written notice and request for final disposition . . . shall be given or sent by the prisoner to the warden . . . or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden . . . or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

(d) . . . The warden . . . or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App.2 sec. 2; see also 730 ILCS 5/3-8-9. Despite the requirement in the IAD that the warden should "promptly forward" the prisoner's request for final disposition to the appropriate federal prosecutor, the Danville warden merely drafted a certificate of confinement and returned the demand for final disposition and certificate of confinement to Ross. After 180 days had passed since Ross had sent his demand for final disposition to the warden (which was returned to him), Ross inquired about the status of his detainer and learned that no action had been taken to forward either his demand for final disposition or certificate of confinement. Taking the matter into his own hands, Ross filed his demand for final disposition with the Clerk for the U.S. District Court for the Central District of Illinois on March 29, 1999. The court forwarded a copy of the demand for final disposition to Assistant United States Attorney Richard N. Cox, and, as a result, Ross was arraigned shortly thereafter in federal district court on April 22, 1999.

Prior to entering a guilty plea on July 23, 1999, Ross attended his arraignment and five additional pre-trial hearings in federal court on June 7, June 10, June 14, July 15, and July 16, 1999. He appeared at each of these proceedings pursuant to a writ of habeas corpus ad prosequendum. Each writ contained the following directive:

We command you, the Warden of the Illinois Department of Corrections, Danville Correctional Center, and the United States Marshal for the Central District of Illinois, to transport the said Jimmie Ross, Jr., . . . in the United States District Court . . . [on a certain date] . . . and then and there to appear in connection with this cause and then and there to present the defendant before the court and from day to day thereafter as may be necessary, and after the said Jimmie Ross, Jr. has so then and there appeared, that you return the said Jimmie Ross, Jr. to the Illinois Department of Corrections, Danville Correctional Center . . . .

At each of the hearings, the judge ordered Ross to be transferred back to state custody at Danville. However, it is

undisputed that Ross was never removed from the Danville facility for more than a portion of a single day for the purpose of attending any of the six hearings stemming from the federal charge pending against him.

On July 12, 1999, Ross filed a motion to dismiss and a motion to hold an evidentiary hearing in which he alleged the following two violations of the IAD: (1) that he was not brought to trial within 180 days of the date he formally requested a final disposition of the federal case by giving a written notice to the warden at the Danville Correctional Center; and (2) that the six separate writs of habeas corpus ad prosequendum that the federal court had used to remove him from Danville for hearings in federal court violated the "anti-shuttling" provision (Article IV(e)) of the IAD.

In this motion, Ross acknowledged that his first argument had been considered and rejected by the United States Supreme Court in Fex v. Michigan, 507 U.S. 43 (1993). Similarly, Ross conceded that this court had previously considered and rejected the merits of his second argument in United States v. Roy, 830 F.2d 628, 635-37 (7th Cir. 1987). Ross asserted that he had filed the motion in order to preserve both issues for appellate review.

Given Ross's admissions as to the controlling nature of Fex and Roy, the district court denied the motion to dismiss without holding an evidentiary hearing. In ruling against the motions, the trial judge stated:

I do believe that no further argument is necessary. The, the [sic] attorneys have, have [sic] both briefed and cited the issues for the Court, and I certainly can understand the defendant's belief that the warden of the Illinois Department of Corrections facility should have forwarded this. But at this point, the Court sees no case law that requires the warden to do things for the defendant. In effect, the case law is clear that it's the defendant's responsibility and obligation to be filing matters with the clerk of the Court of the United States.

And, of course, by raising this issue, while it may have previously been

litigated before the Seventh Circuit, I certainly don't want to deprive the defendant of the opportunity to revisit and reconsider its holdings in the case of United States v. Roy, 830 F.2d 628, and certainly allow the defendant to have the opportunity to have Fex v. Michigan, which is a United States Supreme Court case [at] 507 U.S. 43, a 1993 Supreme Court case, reviewed.

However, this Court believes that it, as a trial court, has no authority to reverse the Seventh Circuit or the United States Supreme Court in any way. So, I will allow those decisions to stand.

On appeal, Ross once again raises the same two arguments.

II. DISCUSSION
A. "Speedy Trial" Argument

With regard to Ross's argument that the 180-day time limit begins to run on the day that the warden or prison staff is in receipt of a demand for final decision rather than on the date when the demand for final decision is filed with the appropriate federal court and prosecutor, the Supreme Court has previously ruled on this issue. And, as Ross admits, the United States Supreme Court has rejected this argument in Fex v. Michigan, 507 U.S. 43 (1993). In Fex, the Supreme Court interpreted the statutory language of the IAD and held that:

[T]he 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.

Id. at 52. It is a basic principle of law that courts of appeal do not have the authority to overrule a Supreme Court decision, Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 542 (1985), and, therefore, we deny Ross's appeal on the speedy trial issue./5


B. "Anti-shuttling" Argument

Ross next claims that his indictment

should have been dismissed because of a violation of the "anti-shuttling" provision contained in Article IV of the IAD. Ross specifically claims that Article IV(e) of the IAD is violated whenever a prisoner is removed from one jurisdiction (in this case, the State of Illinois) to face charges in another jurisdiction (in this case, the federal government), and the charges in the receiving jurisdiction (the federal government) are not disposed of prior to the prisoner being returned to the original jurisdiction (Illinois). Ross's argument is based on the following language in Article IV(e) of the IAD, commonly referred to as the "anti-shuttling" provision. This provision states that:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. App.2 sec. 2. Ross argues that his brief periods of confinement in federal custody on six separate accessions required trial of the pending federal charge against him prior to his return to state custody in Illinois. In so arguing, Ross is specifically requesting that we overrule our decision in United State v. Roy, 830 F.2d 628 (7th Cir. 1987).

In Roy, a state prisoner claimed that an overnight stay in federal custody for the purposes of attending a hearing on federal charges lodged against him "necessitated trial of all federal charges pending against him prior to his return to state custody." Id. at 635. We rejected this argument and held that

there was no real interruption of Mr. Roy's state imprisonment resulting from his overnight stay in Bridgeport, we find that there was no violation of the anti-shuttling provisions of article IV of the IAD.

Id. at 637. The holding in Roy was based upon our determination that the brief

overnight transfer did not threaten the prisoner's rehabilitation efforts. Id. at 636. "The IAD was meant to protect the prisoner against endless interruption of the rehabilitation programs because of criminal proceedings in other jurisdictions." Id.

In the present case, Ross complains of six transfers in which he was returned to state custody on the same day that he was removed from the Danville prison. Ross does not allege, and the record does not support, that these trips interfered with his rehabilitation. We hold that the handful of day trips Ross experienced does not constitute the "endless interruption" of rehabilitation that the IAD was designed to guard against and reaffirm our holding in Roy. Finally, we note that our decision is consistent with a majority of other circuits that have held that brief interruptions in state prison confinement for the purpose of attending proceedings in federal court do not violate the IAD, particularly where the prisoner is returned to state custody on the same or following day. United States v. Daniels, 3 F.3d 25, 27 (1st Cir. 1993); United States v. Roy, 771 F.2d 54, 60 (2nd Cir. 1985); Sassoon v. Stynchombe, 654 F.2d 371, 374-75 (5th Cir. 1981); United States v. Taylor, 173 F.3d 538 (6th Cir. 1999), cert. denied, 120 S. Ct. 448 (1999); Baxter v. United States, 966 F.2d 387, 389 (8th Cir. 1992); and United States v. Johnson, 953 F.2d 1167, 1171 (9th Cir. 1992).

The decision of the district court is

AFFIRMED.

/1 At the time of the indictment, Ross was in the custody of Illinois state prison officials on a pending state charge of possession of a con- trolled substance.

/2 The IAD is a compact entered into by 48 states, the United States, and the District of Columbia to coordinate the disposition of outstanding criminal charges brought against prisoners incar- cerated in other jurisdictions. There are two relevant provisions of the IAD to this case, Article III(a) and Article IV(e). Article III(a) provides that a prisoner may formally demand that criminal charges pending in another jurisdiction be brought to trial within 180 days. Article IV(e) states that:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

/3 The facts underlying Ross's crime are not relevant to his appeal. In entering into a plea agreement, Ross attested that the following facts were true:

Prior to April 24, 1998, the defendant was convicted of a crime punishable by more than one year of imprisonment. Also before that day, a warrant had been issued for the defendant's arrest in connection with another matter. During the afternoon of April 24th, officers from the Champaign Police Department observed defendant driving a vehicle and attempted to apprehend him on that warrant. A short chase ensued in which the defendant's automobile crashed into several other automobiles. The defendant then fled on foot and was later apprehended by officers. Following his arrest, officers found a magazine containing seven rounds of .380 caliber ammunition in one of his pants pockets. Officers also found a Lorcin .380 caliber semi-automatic pistol, bearing serial number 358661, under one of the cars that the defendant had crashed into. Defendant was later interviewed and admitted earlier possessing the recovered firearm. This firearm had previously traveled in interstate commerce.

/4 A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." Fex v. Michigan, 507 U.S. 43, 44 (1993).

/5 In fact, Ross's appellate brief specifically states:

For Mr. Ross to get any relief under Article III of the IAD, the Supreme Court would have to overturn Fex. Mr. Ross is therefore raising this issue to preserve it for a writ of certiorari should this Court deny Mr. Ross the relief he seeks on his other issue.